## W. W. HILL v. THE STATE.

### No. 3904. Decided December 4, 1907.

**1.—Murder—Manslaughter—Charge of Court—Insulting Language Concerning Female Relatives—Hearsay.**

Upon trial for murder where the defendant testified that certain State witnesses had told him that the deceased used insulting language concerning defendant's daughter, and that he killed deceased for that reason; and the said State witnesses denied having given this information to the defendant; but other State's witnesses testified that defendant had been informed of the same statement by deceased through them, and that they had heard this from the State's witnesses who denied having made such statement, it was error for the court in his charge to limit the testimony of those State's witnesses who insisted that such statement was made by the other State's witnesses to the credibility of the State's witnesses who denied having given such information to the defendant.

It made no difference whether the information that caused the killing was hearsay or not; the question was whether defendant believed it.

**2.—Same—Evidence—Declarations of Deceased Not Communicated to Defendant.**

Where upon trial for murder the defense relied upon insulting language of the deceased concerning defendant's daughter, and the State disputed said defense, it was error to reject testimony by the defense to show uncommunicated declarations by deceased concerning the want of chastity of defendant's daughter, to show the credibility of defendant's statement.

**3.—Same—Evidence—Witnesses as Strangers—Certificate of Judge.**

Where upon trial for murder the defendant sought to strengthen the testimony of certain witnesses because they were strangers in the county of the trial, and the certificate of the judge to the bill of exceptions did not verify this contention, the same could not be considered on appeal.

**4.—Same—Charge of Court.**

Where defendant had been acquitted of murder in the first degree and was again placed on trial, there was no reversible error in the court's charge that defendant was now on trial for murder in the second degree, and that he would also submit to the jury the issue of manslaughter.

Appeal from the District Court of Hamilton. Tried below before the Hon. N. R. Lindsey.

Appeal from a conviction of murder in the second degree; penalty, thirty years imprisonment in the penitentiary.

The opinion states the case.

*Goodson & Goodson, J. C. George, H. E. Chesley* and *A. R. Eidson,* for appellant.—On question of testimony and charge of court with reference to defendant's information as to insulting language used by deceased: Johnson v. State, 47 Texas Crim. Rep., 523, 81 S. W. Rep., 945; Orman v. State, 24 Texas Crim. App., 495; Adams v. State, 60 S. W. Rep., 117; Bracken v. State, 29 Texas Crim. App., 362; Mies v. State, 18 Texas Crim. App., 156; Jones v. State, 33 Texas Crim. Rep., 492.

*F. J. McCord,* Assistant Attorney-General, *Sadler & Arnold,* for State. —On question of court's charge on manslaughter: Sullivan v. State, 48 Texas Crim. Rep., 201, 85 S. W. Rep., 810; Ball v. State, 78 S. W. Rep., 508; Long v. State, 48 Texas Crim. Rep., 175, 88 S. W. Rep., 203.

BROOKS, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at thirty years confinement in the penitentiary.

Appellant in his motion for a new trial objected to the following charge of the court: "Now, if you believe from the evidence that the defendant, prior to the time he killed Charley House (if he did so) had been informed by Clarence Griffin or by Chester Griffin, that the said Charley House, had used insulting language towards the daughter of the defendant, in substance that the said Charley House had stated that he had had sexual intercourse with the said daughter of the defendant, and if you further believe from the evidence that the defendant believed

that the deceased had stated that he had had sexual intercourse with defendant's daughter (if you find either Clarence or Chester Griffin had so informed him) and if you find from all the facts and circumstances in evidence that said information aroused in the mind of defendant sudden passion, such as anger, rage, sudden resentment or terror, rendering his mind incapable of cool reflection, and that the defendant, on first meeting with the deceased, after he, the defendant had been informed (if he had been so informed) that the deceased had made such statements about his, defendant's daughter, and acting under the immediate influence of such sudden passion (if any) in Hamilton County, Texas, and on or about the 18th day of May, 1906, with intent to kill, shot with a gun and thereby unlawfully killed the said Charley House, as alleged in the indictment, you will find the defendant guilty of manslaughter, and so say in your verdict, and assess his punishment at confinement in the penitentiary for any period of time not less than two nor more than five years, and in this connection you are instructed that it makes no difference whether the said Charley House had in fact ever used the insulting language about the daughter of the defendant, in substance that he had had sexual intercourse with the said daughter of the defendant, provided, you believe from the evidence that Clarence or Chester Griffin informed the defendant, prior to the killing of the said Charley House, that he the said House had used such insulting language about defendant's daughter, and that the defendant believed from the said statements of the Griffins or either of them, to him, that the said Charley House had in fact used such insulting language about the defendant's said daughter, and that the information in fact aroused in the mind of the defendant such sudden passion as to render him incapable of cool reflection, and that such state of mind continued up to the time of the killing.

"You are instructed that the testimony of Joe Collier, 'that Chester Griffin told him, in Mr. Griffin's field, that House said to him that when he (House) and the girl came from Dublin around by way of Hico, that they acted as man and wife, and that House claimed he had been keeping the girl,' and the testimony of Charlie Collier 'that Chester Griffin, at the ball game, at Bear Creek told him that House had told him (Chester Griffin) that he had taken the girl from Dublin around by way of Hico and had stayed all night with her, and that he had been keeping her for some time,' and the testimony of old man Britton, 'that Chester Griffin stated, at the ball game on Bear Creek, that House told him that he had taken Hill's girl around from Dublin by way of Hico, and that he had stayed all night with her, and that he had been keeping her a year or two,' was not admitted before you to prove or as tending to prove that House had in fact made such statements and you will not consider said testimony at all for that purpose; said testimony was admitted before you and you are permitted to consider the same in passing upon the credibility of said witness Chester Griffin, as a witness in this case, and in passing upon the weight to be given to his testimony and in determin-

ing the issue whether the said witness, Chester Griffin, made the statements to the defendant in regard to House, that the defendant claimed he did make."

The evidence in substance shows, from defendant's standpoint, that Charley House had been talking about his daughter in a manner that sorely reflected upon her chastity; being armed with information from various witnesses that Clarence and Chester Griffin had told said witnesses that said Griffins had informed them that deceased had been talking about his daughter, he armed himself with a gun, went to the field where the Griffin boys were plowing, and being informed, in substance, that the deceased had told them that appellant's daughter was unchaste, he proceeded to the field where deceased was plowing, and there shot deceased to death. The State's case makes out a cold-blooded murder; the defense testimony makes out a case of manslaughter. The learned trial court seems to have proceeded upon the theory that appellant could not act upon hearsay testimony and thereby reduce the homicide to manslaughter. In other words, the trial court seems to have acted on the theory that before appellant could reduce the homicide to manslaughter, on the ground that deceased had made insulting remarks about his daughter, that some witness would have to inform appellant that he, the witness, had been told by the deceased that appellant's daughter was unchaste, or that the deceased would have to make a statement to the witness and the witness communicate said statement to appellant, substantially showing that deceased had made remarks that reflected upon the chastity of his daughter. This is not the law. If the deceased told the Griffin boys that appellant's daughter was unchaste, this, in a technical sense, would be hearsay testimony, even if said Griffin boys should testify to same themselves. The record before us shows that the Griffin boys denied in substance making the statement to appellant that he swore they did make just prior to the difficulty. Now, this being the shape of the testimony on the matter, it was clearly prejudicial and harmful error for the court to tell the jury that the testimony of other witnesses, who had been told by the Collier boys, in substance, that appellant's daughter was unchaste, was not admitted to prove or as tending to prove that deceased had in fact made such statement, but that said testimony was admitted "before you for you to consider the same in passing upon the credibility of said witness Chester Griffin, and in passing upon the weight to be given to his testimony, and in determining the issue whether the said witness Chester Griffin made the statements to the defendant in regard to deceased that defendant claimed he did make." In other words, if the Collier boys or any other witness, should make a statement to appellant to the effect that appellant's daughter was unchaste, and appellant, relying upon said statement, seeks out and slays deceased upon first meeting, these facts would force the court to charge upon manslaughter, and would authorize the jury to so find the appellant guilty if they believed said facts, regardless of whether the witnesses who informed appellant of deceased's statement heard the deceased in person

make it or having talked with some other witness who had heard deceased make the statement. A killing for using insulting language about a female relative is not predicated upon whether the information that causes said killing is remote hearsay or not, but is predicated upon the proposition that appellant believed said statement. It is the intent of appellant that the court attempts to get at; his animus and his motive alone controls the decision of the question. The fact that the testimony may be remote hearsay might be a circumstance to be considered by the jury in passing upon whether appellant believed the statement had been made by the deceased. In other words, would merely go to the probative force of the statement and to its credibility, but it is not a matter that could be limited by the court, but is left to the decision of the jury. If appellant receives a wild and floating rumor from the mouth of the fifth or sixth witness, this would have a strong tendency to make the jury believe that appellant did not act on said rumor, but it would not preclude the fact that he did so act, and if the jury believed that he did so act, then it would be immaterial how remote the hearsay testimony might be. This charge was clearly calculated to injure the rights of appellant. The Griffin boys had denied in substance making any statement to appellant. Now then, to have the court tell the jury that they could not consider the statement made by other parties to appellant except for the purposes above stated, was an unwarranted limitation of said testimony; nor would the fact that appellant himself swore that he acted alone upon the statement of the Griffin boys militate against the above proposition. The defendant may have believed implicitly the statement of the other witnesses, and the manner of the Griffin boys or their statement may have thoroughly convinced appellant that deceased had made the statement that he says the Griffin boys made to him, and in that sense the statement of the Griffin boys may have been to his mind the sole predicate for the killing, but certainly the fact that various other witnesses had told appellant that the Griffin boys had stated that deceased had slandered his daughter, is very convincing corroborative proof of the fact that the Griffin boys had made said statement, but the fact that it does corroborate the fact that the Griffin boys made the statement would not warrant the court in limiting the statement of other witnesses to the question of the credibility of the Griffin boys. It is original testimony in other words. Appellant's testimony must be treated like that of any other witness. The jury may have believed that appellant was mistaken when he said he relied alone upon the testimony and statement of the Griffin boys, and it was erroneous and reversible error for the court to limit said testimony for said purposes.

Bill of exceptions No. 2 complains of the following: Appellant offered to prove by the witness Dansby that he had a conversation with the deceased at a literary society the latter part of April, as follows: "Deceased and I had our horses tied to the wire fence; the horses began to cut up and we went out there. Deceased told me to wait until he got through smoking. In the meantime, Maud Hill, appellant's daughter,

passed, and deceased said, 'That is a pretty damned fast girl.' I replied, 'Is that so,' and deceased reached in his vestpocket and pulled out a cundrum and said, 'I have worn out a hat full of them on her.' I replied, 'You are a liar, ain't you?' and he said, 'No.' I replied, 'You are a fool for telling it.' Once before the occasion of this conversation, we were going out of town and he asked me if I was acquainted with the Hill family, and he said he had been going with the girl a long time and said that he had been having a hell of a good time with the girl for quite a while. I never told Mr. Hill about that before the killing. I never told anyone about it. I never breathed it to any one." The State objected to said testimony on the ground that said statement had not been communicated to the defendant prior to the homicide, and that it did not appear that the defendant knew of this statement prior to the homicide. The court sustained the objection. In a criminal case where appellant relies upon any character of defense and said defense is disputed by the testimony of the State, that which renders probably true appellant's defense is always admissible testimony. Evidence that is corroborative or renders probably true appellant's testimony is always admissible. Of course, if appellant killed deceased for insulting language concerning his daughter, his defense must depend upon the information upon which he acted, but this record shows the State solely controverted the fact that he received such information. Now then, the testimony of the witness Dansby, if true, shows that the deceased talked to the witness Dansby, and renders highly probable that he talked to the Griffin boys. It would appear the court should limit this testimony, however, to the only purpose for which it could be introduced; that is, to show the credibility of the statement of appellant and to indicate the probable truth of appellant's statement wherein he says the Griffin boys informed him, and that other people informed him, that deceased had been talking about his daughter, and that he could not predicate a defense of manslaughter upon uncommunicated insults, but said uncommunicated insults could only be introduced to show the probable truth of insults that had been communicated. It follows, therefore, that the court erred in rejecting this testimony.

Bill of exceptions No. 3 shows that the defendant's witnesses Hicks and Story testified that they were acquainted with the witnesses Britton, Collier and Cootes, and were acquainted with the general reputation of said witnesses in the community in which they live for truth and veracity, and upon counsel for the State objecting to said witnesses being permitted to state what the general reputation of these witnesses in the community in which they live was, because the State had not put in issue the reputation of said witnesses, the court sustained the objection and refused to permit said witnesses to testify that the general reputation of said witnesses in the community in which they lived for truth and veracity was good. Defendant then and there excepted because it was shown that the witnesses were strangers in Hamilton County; that the witness Britton had never lived in Hamilton County, but had only been

in the county a short time; that his home was in Dallas County where he had lived for a long time and was well known; and as to the witness Collier, who had only lived in the county a short time, less than a year, and was not acquainted in Hamilton County, knew only a few persons, and as to the witness Cootes, he had lived in Hamilton County less than a year and was not known, but well acquainted in Dallas County where he lives now and has lived for a number of years. The mere fact that witnesses testify in a case and their testimony is controverted by other testimony does not bring in issue the credibility and general reputation of said witnesses. Furthermore, the bill does not state that the witnesses were strangers in Hamilton County, but that appellant objects to the court refusing the testimony on the ground that they were strangers in Hamilton County. There is not a certificate of the court that they were strangers.

Appellant objected to the following paragraph of the court's charge, to wit: Defendant stands charged by indictment for murder; he is now on trial for murder in the second degree, and I will also submit to you the issue of manslaughter. To this charge in the indictment the defendant has pleaded not guilty. Appellant insists in view of the fact that he had been acquitted of murder in the first degree on a former trial, that defendant was on trial at this time for manslaughter as well as murder in the second degree. We do not think there is anything amiss in the charge of the court.

Appellant also complains in this record by proper bill of exceptions of the misconduct of the jury, but in view of the fact that the case will be reversed upon the matters above pointed out, we do not deem it necessary to review same. But for the errors of the court above indicated, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Henderson, Judge, absent.