MIKE BEREAL v. THE STATE.

No. 5939.          Decided November 10, 1920.

1.—Murder—Manslaughter—Insult to Female Relative—Withdrawal of Testimony.

Upon the trial of murder and a conviction of that offense, it was reversible error on the part of the court below, in the instant case, to withdraw from the consideration of the jury a large amount of evidence introduced

by the defense tending to show undue intimacy between the wife of the
defendant and the deceased prior to the homicide, on the ground that this
testimony had not been communicated to the defendant.

### 2.—Same—Evidence—Uncommunicated Acts of Intimacy—Insult to Female Relative.

Where, upon trial of murder, the defendant introduced testimony that
a short time before the homicide he was apprised of the fact that the de-
ceased had been intimate with defendant's wife, and that this was the cause
of the homicide, other evidence that the deceased at different times was
guilty of uttering insulting words and indulging in insulting conduct toward
defendant's wife, although not communicated to him, was admissible to
strengthen the probable truth of the fact that defendant had received such
information. Following Hill v. State, 52 Texas Crim. Rep., 245, and other
cases. Distinguishing McVey v. State, 81 S. W. Rep., 740, and other cases.

### 3.—Same—Evidence—Insult to Female Relative—Former Conduct of Wife.

Where, upon trial of murder the defendant claimed insulting conduct
by the deceased to his wife, and the evidence showed that defendant had been
married some seven years to said wife at the time of this homicide, and that
he killed deceased on first meeting for intimacy with defendant's wife of
which he had been informed shortly before the homicide, the State could
not overcome adequate cause because of the fact that prior to the wife's
marriage to the defendant she had been an inmate of a house of prostitution,
the evidence showing that she had been true to the defendant until the com-
ing of the deceased some months before the homicide. Following Ballard v.
State, 71 Texas Crim. Rep., 587.

### 4.—Same—Evidence—General Reputation.

Where, upon trial of murder, a witness for the defense had testified to
defendant's good reputation, it was inadmissible to ask the witness if he
would have so testified if he had known that defendant had married a whore.

Appeal from the District Court of McLennan. Tried below before
the Honorable Richard I. Munroe.

Appeal from a conviction of murder; penalty, eight years in the
penitentiary.

The opinion states the case.

*Taylor & Forrester,* for appellant.—The State's evidence in this
case simply shows an unexplained killing. Every killing on account
of insulting conduct toward a female relation appears rather cold
blooded, if we view only the final tragedy without knowing of the
tragedy of the destruction of a home that had preceded, and that
constitutes the inducement and moving cause, and brings on the
uncontrollable passion and motive for the killing. Appellant and
deceased had been friends all their lives, except some minor trouble
about twelve years before which had long since been forgotten. The
record is filled with undisputed evidence of oft repeated acts of
adultery of deceased with Wilma, the wife of appellant, during three
or four months preceding the homicide; that appellant had posi-
tively discovered these relations only a few minutes before the kill-

ing, and that on being told of the fact of this adultery by his wife he believed it and became almost crazy with anger and rage and resentment is not only abundantly shown, but is undisputed in the testimony in this record, and that he immediately took his pistol and went in search of deceased and killed him on first meeting with very little ceremony is equally well proven and as certainly undisputed, and the original moving cause, and the only cause for this homicide is disclosed by the testimony of Wilma Bereal—*her adultery with the deceased Howard Norris*. Doss v. State, 43 Texas Crim. Rep., 553; Stewart v. State, 52 id., 285; Davis v. State, 155 S. W. Rep., 448; Bibb v. State, 205 S. W. Rep., 136.

When it is sought to reduce the killing from murder to manslaughter because of insulting words or conduct toward a female relation, or adultery with a female relation and the defendant on receiving information of certain acts of adultery or insulting words or conduct commits the homicide, other acts of adultery or matters tending to show intimate relations of the parties or other insulting words or conduct though uncommunicated to appellant prior to the killing are material and competent evidence in his defense. Fossett v. State, 41 Texas Crim. Rep., 405; McAnear v. State, 43 id., 521; Hill v. State, 52 id., 245; Davis v. State, 155 S. W. Rep., 546; Walker v. State, 156 id., 208.

On question of admitting testimony that wife of defendant before her marriage with him had lived in a public whore-house, some seven or eight years before the marriage: Ballard v. State, 160 S. W. Rep., 717; Bibb v. State, 205 id., 136.

On question of admitting evidence on issue of general reputation and permitting cross-examination thereon of the former conduct of defendant's wife: Holsey v. State, 24 Texas Crim. App., 42; Arnold v. State, 28 id., 480; Hudson v. State, 41 Texas Crim. Rep., 453; Meill v. State, 49 id., 223; Jennings v. State, 42 id., 83; Ballard v. State, 160 S. W. Rep., 718.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of former conduct of defendant's wife: Redman v. State, 149 S. W. Rep., 670; Redman v. State, 52 Texas Crim. Rep., 596.

On question of withdrawing testimony of insulting conduct: McVey v. State, 81 S. W. Rep., 740, and cases cited in opinion.

On question of former immoral conduct of defendant's wife: Fox v. State, 158 S. W. Rep., 1141; Griffin v. State, 54 id., 586; Wood v. State, 21 id., 602.

LATTIMORE, Judge.—Appellant was convicted of murder in the District Court of McLennan County, and his punishment fixed at eight years' confinement in the peintentiary.

In our view of this case, it must be reversed, because the trial court

withdrew from the consideration of the jury, and instructed them not to consider a large amount of evidence introduced by the defense tending to show undue intimacy between the wife of appellant and the deceased prior to the homicide. It appears from the record that appellant was originally permitted to place this evidence before the jury upon his promise to show that the same was known or had been communicated to him prior to the killing. After the testimony of both sides had closed, the State made the point that it had not been shown that the facts in said testimony had been communicated to appellant, and the court being of like view, withdrew said testimony and instructed the jury as above. This action of the court was duly excepted to.

The theory of the appellant was manslaughter at most, predicated on the fact that a short time before the homicide his wife had admitted to him that she had been intimate with deceased, and the evidence seems strongly to support appellant's theory. When a homicide occurs, and the theory of the defense is that same was committed as the result of passion, caused by insulting words or conduct of the deceased toward a female relative, it is necessarily true that it must be shown that it was known or communicated to the accused that such insult had been given; and it might appear that there being testimony to the effect that he had been apprised of such insult, the truth or falsity, of whether or not such insulting words or conduct had in fact occurred, would not be material, and evidence thereof would not be admissible. This is not sound, for even though there be testimony to the effect that such insult was communicated to the accused, it is usually given by his witnesses—frequently an interested wife, sister, or other relative—and the issue is still before the jury as to the truth of the fact of such communication, to be decided by them from all the evidence in the case. If in fact it can be shown that the deceased was guilty of uttering the alleged insulting words, or that he indulged in the insulting conduct, such testimony materially strengthens the probable truth of the fact of the communication thereof to the accused, and is admissible as corroborative. Hill v. State. 52 Texas Crim. Rep., 245;. Fossett v. State, 41 Texas Crim. Rep., 405; McAnear v. State, 43 Texas Crim. Rep., 521; Davis v. State, 70 Texas Crim. Rep., 37, 155 S. W. Rep., 549; Walker v. State, 70 Texas Crim. Rep., 84, 156 S. W. Rep., 208. The authorities cited by the State as combatting the soundness of this view, will be found upon close examination, not to justify such citation. In McVey v. State, 81 S. W. Rep., 740, there was no claim that the killing was because of insults to the daughter of the accused, and this Court rightly held that an insulting statement of deceased toward said daughter, which was never communicated to the accused before the killing, was not admissible. In Wright v. State, 36 Texas Crim. Rep., 427, 37 S. W. Rep., 732, there was no claim that the accused shot deceased at their first meeting after the utterance of the alleged insult, or that

such insult had ever been communicated to him.  In Cockerel v. State, 32 Texas Crim. Rep., 585, 25 S. W. Rep., 421, the trial court correctly rejected evidence of an uncommunicated insult some years before the homicide.

From the evidence it will appear that appellant and his wife had been married some seven years at the time of this homicide.  The appellant claimed that he shot deceased because of the intimacy of the latter with the wife of appellant, of which fact he was informed only a short time before the homicide.  The State contested the proposition that said killing was upon sudden passion, arising from said adequate cause, and introduced in evidence, over the objection of appellant, the fact that prior to her marriage to appellant, said wife had been an inmate of a house of prostitution.  This was evidently thought to be admissible, under Article 1134 of our Penal Code, which sets forth that in every case where an unlawful killing is sought to be reduced to manslaughter by proof that the accused acted upon sudden passion, caused by insulting words or conduct of the deceased toward a female relative, it shall be competent to prove the general character of the female insulted, in order to ascertain the extent of the provocation.  Appellant's wife testified that after meeting him while an inmate of said house of prostitution, she left said house and went to live with her mother; and some months thereafter married the appellant, and that she had been true to him in every way until the coming of the deceased some months before the homicide.  No evidence in the record disputes this testimony.  No witnesses testified to any immorality of the woman after she became appellant's wife, until the appearance of the deceased upon the scene.  We cannot agree with the proposition that a man who has married a Magdalene may not love and be loved in return, and that she may not become the guarded object of his conjugal care.  The man who frequents the houses of fallen women, may feel that he is no better than they, and it would seem might link his fortunes with one of them without forfeiting his right to care for her and protect her thereafter; and if from the time of their marriage, he have every reason to believe her true and faithful to him, he should have every right arising in behalf of another man in defense of the honor of his wife, while she occupies to him that relation.  If the manslaughter was admitted to be predicated on some insulting words regarding her character before she married, or if immorality on her part subsequent to her marriage appeared to be known to appellant, the case would be different, but if for seven years the woman had been appellant's wife, without lapse, we think he might invoke the law of manslaughter unhindered by proof of what she had been before they married.  Ballard v. State, 71 Texas Crim. Rep., 587, 160 S. W. Rep., 716.

For substantially the same reason, we think the question to the witness Faulkner, who had testified to appellant's good reputation,

wherein he was asked if he would have so testified if he had known that appellant had married a whore, was improper.

There are other errors complained of in the record, which we do not think necessary to notice, as they will probably not occur upon another trial.

For the reasons mentioned, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*