ARCHIE LANGRUM V. THE STATE.

No. 17132.   Delivered January 2, 1935.
State's Rehearing Granted February 6, 1935.

The opinion states the case.

*R. G. Allen,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is robbery; penalty assessed at confinement in the penitentiary for seven years.

Appellant was indicted March 9, 1934.   He was tried and convicted May 2, 1934.   The original motion for new trial was filed May 3, 1934, and overruled on the same day.   In due time

appellant filed an affidavit stating that he was without money and was unable to pay for a transcript of the testimony. This was contested by the county attorney but was finally granted, and an extension of eighty days was allowed within which to file the statement of facts.

The record is before this Court without a statement of facts. As we understand the record, the absence of the statement of facts is not due to any fault of the appellant. The record reached this court on August 4, 1934. In the absence of the statement of facts this court is not in a position to appraise the record or the complaints made by appellant with reference to the procedure and the sufficiency of the evidence.

For the reason that without his fault the appellant has been deprived of a statement of facts, the judgment is reversed and the cause remanded upon the authority of the following cases: Ballinger v. State, 8 S. W. (2d) 159; Banks v. State, 21 S. W. (2d) 517; Knox v. State, 22 S. W. (2d) 932. See also Tex. Jur., vol. 4, p. 417, sec. 285.

### ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Counsel for the State have called attention to the fact that there is now before the court the statement of facts, which had previously been mislaid. It therefore becomes appropriate to consider the case upon its merits.

A motion to quash the indictment was made by appellant upon the assertion that in the selection of the grand and petit juries there was unlawful discrimination against him because of his race, he being a negro.

A rehearsal of the testimony in detail is not deemed necessary. It appears that there were no negroes selected for jury service.

The term of court at which appellant was tried began March 5, 1934. The indictment was presented on the 9th of that month. The trial took place on May 1, 1934, and a verdict was rendered on the following day. The jury commissioners were appointed at a previous term of court in July. Prior to the opening of the term of court at which appellant was tried the jury commissioners selected a grand jury and a list of jurors for ordinary cases and a special venire list for capital cases. The offense is charged to have been committted on the 28th of February preceding the indictment.

The testimony bearing upon the subject of discrimination constitutes quite a volume. As stated above, sometime before

the commission of the offense by appellant, the jury commissioners selected the grand jury and a list for ordinary jury service, as well as a special venire list. The testimony of the jury commissioners is to the effect that they knew of no negroes suitable for jury service. The men were selected from the list of tax-payers, including both property and poll tax. The jury commissioners were from several localities. They insisted that they were guided alone by the desire to select persons who would be qualified jurors. Some of the jury commissioners admitted that there might be some negroes in the county who would be qualified jurors but disclaimed knowing of any particular one. One of the commissioners expressed the view that he did not favor a mixed jury, but insisted in his testimony that this was merely his opinion and had no effect upon the procedure followed in the selection of the jury and in performing the duties of jury commissioner. According to the testimony, all of the men selected upon the jury list were known to one or more of the jury commissioners. In reply to a hypothetical question, some of the commissioners stated that they could not say they would have selected a negro on the jury or not if they had known of one who would be qualified, but stated that they knew none of that character. The record does not show the number of negroes in the county though it indicates that there were quite a number. In several places in the record are found statements to the following effect: "I do not know of any negro in Shelby County who is honest, peaceful and law-abiding citizen who would be qualified as a juror. I do not know of any in my section—not that I would consider, in my judgment, as qualified jurors."

In the examination of the jury commissioners, they reiterated that they acted in good faith, and that their desire, intention, purpose and procedure was to select to the best of their ability men who would meet the requirements of jurors. As stated above, the procedure is stated in great detail; so much so that we cannot reproduce it in this opinion.

From the testimony of one of the jury commissioners we quote: "I do not remember of seeing a single negro's name on the list that had paid his poll tax. We selected the jury mostly from the poll tax list."

Another jury commissioner testified: "In the grand jury we picked and selected, we only picked white men. We did not purposefully exclude any negroes from serving. * * * You see, it never entered my mind at all. * * * In making up that selec-

tion, I did not come across any negro that I thought had those qualifications."

The commissioner expressed his opinion to the effect that he did not purposely exclude any negroes; that he did not see any names on the poll tax list who were eligible for jury service. From the testimony we quote further: "There was not any mention or discussion of the negro proposition in the jury commission at all. It was not mentioned at all. It was not our purpose to exclude the negroes from the jury or grand jury, but it was our purpose to select the best jury for this court. We wanted to do like you said, and select the very best men we could."

As stated above, the evidence on the subject is voluminous. Full quotation of it is not deemed necessary or desirable. After hearing the evidence, the trial judge entertained and acted upon the opinion that there had been no violation of the Fourteenth Amendment to the Constitution of the United States as the matter has been construed on many occasions where the subject has arisen in this and other states. Among the latest decisions of this court is Ramirez v. State, 119 Texas Crim. Rep., 362, the result of which was sanctioned by the Supreme Court of the United States, reported in 284 U. S., 659, 76 Law Ed., 558. The matter has been before this court many times. See Branch's Ann. Texas P. C., p. 300. Among other cases is Martin v. Texas, 200 U. S., 316, 50 Law Ed., 497.

Bob Brittain, the alleged injured party, testified that appellant entered his place of business and forced him to surrender his money at the point of a pistol. Officers were called and the appellant was captured. The measurements of tracks and shoes of the appellant and other circumstances supported the testimony of Brittain touching the identity of the appellant.

. Apppellant testified to an alibi and introduced witnesses supporting his contention that he was not present at the time of the alleged offense. Alleged conversations of witnesses with Brittain were introduced tending to support the issue of mistaken identity. The appellant's claimed absence from the place at which the robbery took place was supported by circumstances as well as by direct testimony. The robbery was established without controversy.

The question of identity was properly submitted to the jury in the charge of the court against which appellant directed some criticisms by way of exceptions, notably, paragraphs 9 and 10 of the charge. We perceive no merit in the complaint. The paragraphs mentioned read respectively as follows:

"In connection with his plea of not guilty, the defendant sets up as a defense herein what is known in legal phraseology as an 'alibi'; that is, that if the offense was committed, as alleged, the defendant was, at the time of the commission thereof, at another and different place than that where such offense was committed, and therefore was not, and could not, have been the person who committed the same."

"Now, if the evidence raises in your minds a reasonable doubt as to the presence of the defendant at the place where the offense was committed, if the same was committed, at the time of the commission thereof, you will find the defendant 'not guilty'."

In paragraph 11 the jury was given an instruction which was regarded as fully conserving the appellant's rights. The jury was instructed in substance that the fact that defendant is under indictment for the offense of robbery in another case is not evidence of his guilt; that said testimony can only be considered, if considered at all, in passing upon the credibility of the appellant as a witness, "and you are instructed not to consider said testimony, if you consider it at all, for any other purpose whatsoever."

In paragraph 12 of the charge the jury was again instructed that they could not consider the indictment in this case as any evidence of guilt.

The motion for rehearing is granted, the order of reversal is set aside, and the judgment of conviction is affirmed.

*Rehearing granted and judgment affirmed.*