## Lonnie Mitchell v. The State.

No. 18696.   Delivered March 31, 1937.
State's Rehearing Denied May 19, 1937.

The opinion states the case.

*Gray Browne* and *Oliver Cunningham,* both of Abilene, for appellant.

*J. R. Black,* District Attorney, *Scarborough & Ely,* and *Walter Ely,* all of Abilene, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

It was charged in the indictment, in substance, that appel-

lant, with malice aforethought, killed Chester Hutcheson by shooting him with a pistol.

The testimony adduced by the State was, in substance, as follows: Appellant, who is a negro, operated a cafe in the town of Merkel. In his cafe he maintained a domino table, a piano and a Victrola. Deceased had ordered him to move the domino table. Shortly before the homicide, deceased came to the cafe and asked appellant if he had moved said domino table. Appellant answered in the negative and advised deceased that "he (appellant) played sometimes for fun." Deceased then left the restaurant. After deceased left appellant said to some of his patrons that he did not think deceased was treating him right. Appellant had stated on prior occasions that deceased was favoring Rance's cafe where dominoes were played. In a short while deceased returned to the cafe and called to appellant to come outside. It appears that deceased had no warrant of arrest. Appellant stated to deceased that he would not come out. Deceased then opened the screen door with his left hand and started in. Appellant procured a pistol which was close at hand and shot deceased. While deceased was armed with a pistol, he did not draw it from the holster, nor make any effort to draw it.

W. H. Laney, a witness for appellant, and who was at the time of the homicide constable of the precinct embracing Merkel, testified that shortly prior to the homicide one Scott called him and advised him that appellant wanted the witness to come to his cafe; that the witness and J. E. Tucker, night watchman, responded to the call; that they went to the cafe and appellant met them outside; that appellant said to them: "Mr. Chester (deceased) has been up here tonight and he has cussed me and abused me and stopped my dance and didn't stop the dance up at the other place"; that appellant told them that there was gambling going on at his competitor's restaurant; that he also stated to them that deceased would not interfere with his competitor; that the witness and Tucker told appellant that they wanted him to see the mayor, the deceased, and the aldermen and reach an understanding as to the kind of amusement appellant could maintain in his cafe; that the witness and Tucker then left and went to the restaurant of Rance, appellant's competitor; that later they returned to appellant's restaurant and played the Victrola; that the witness asked one of the customers of appellant what deceased had said to appellant; that said customer replied that deceased had ordered appellant to move his domino table and to stop

the dancing that was in progress in the cafe; that the witness and Tucker then got in the car and started to leave; that appellant walked outside with them; that at this juncture deceased appeared and appellant turned and walked into the cafe; that deceased appeared to be "mad at Mr. Tucker"; that witness advised deceased that appellant had called him (witness) to come to the cafe; that witness also told deceased appellant had told him that deceased had cursed and abused him and stopped his dance, but that deceased would not interfere with the dance going on at Rance's place; that deceased replied: "That G— d— s——of-a-b— told you that?" that deceased called to appellant to come out; that deceased said to appellant: "If you don't come out here I am coming in after you"; that deceased opened the screen door with his left hand and started into the cafe; that witness heard a shot and saw deceased fall; that witness ran to deceased; that deceased's right arm was under his body; that deceased's pistol was back of deceased, but that same was not clear of the scabbard.

The night watchman gave testimony substantially the same as that of the constable.

Appellant's wife testified that as deceased started to enter the door she saw him reach to his right side; that she turned away and was not looking at deceased at the time he was shot.

She testified, further, that when deceased ordered appellant to come outside appellant said: "Mr. Chester, I can't come out there."

Appellant testified, in substance, as follows: In February, 1936, he was tried for gambling and acquitted. Deceased appeared against him as a witness. As he (appellant) left the courtroom, deceased said to some bystanders: "That's the smart negro. I will get him." In March, 1936, deceased came to his place of business and asked him who gave him permission to run domino tables in said place. He advised deceased that the city clerk had told him that there was no law against operating domino tables. Deceased advised him that he wanted the tables removed. He removed one of the tables to his cafe and took out half of the partition behind which the table had been placed. In March, 1936, deceased came to his cafe and asked him if he was still playing dominoes. He replied in the negative and deceased said: "Well, I had better not hear of you playing any more." On the night of the homicide deceased came to his cafe and again asked him if there had been any domino playing there. He replied in the negative. Later he walked outside and met deceased. Deceased kicked him, causing him

great pain. When deceased left appellant had someone call the constable to come to the restaurant. When the constable and the night watchman appeared he advised them that deceased had cursed and abused him. Deceased later returned to the cafe and while standing about four feet from the door, called to him to come out. He replied: "Mr. Chester, I can't come out there." Deceased said: "G— d— you, you will come out or I'll come in there and get you." At this juncture deceased opened the door and started in. We quote from appellant's testimony, as follows: "I raised that pasteboard box and got my gun, pulled it back that way but never took it all the way out of the pasteboard box. When he snatched that door open and started in he came right at me. He came up that way (indicating) and when he came up that way I brought the gun down that way (indicating) and shot. When he threw his hand up he had his gun in his hand. * * * I had to shoot him to save my life. I was afraid of him. I knew I was going to get killed because the gun was coming up. I was looking at the gun."

The attorney who had represented appellant at the time he was acquitted on a charge of gambling testified that while the jury was deliberating upon said case deceased stated to the witness that the town of Merkel was too small for him and appellant, and that one of them was going to have to leave. Again, this witness testified that deceased told him that he had had trouble with appellant two or three times before.

Witnesses for the State gave testimony rebutting appellant's testimony to the effect that prior to the homicide deceased had cursed and abused appellant.

On cross-examination the district attorney elicited from appellant the following testimony:

"I do not now have an indictment pending against me at the present time, that I know of. It is not a fact that I am now under a felony indictment in Calcasieu County or Calcasieu Parish, Lake Charles, Louisiana, for the murder of the foreman of a construction gang. That is not a fact. I am not under indictment. I am not under such an indictment that I know of. It is a fact that the sheriff of Lake Charles, Louisiana, told me that he had an old murder indictment against me, and that he was here after me, provided he could get me. He told me that last night. That is the sheriff sitting over there. So I do know that there is an indictment now pending against me for murder in Lake Charles, Louisiana."

Also appellant testified that he was in Louisiana in 1921,

but he declared that he had never been in Lake Charles, Louisiana. Moreover, he testified that he had never killed anyone until he shot Chester Hutcheson, the deceased. He testified further, that about a week before the present trial he was asked by a man in Baird, Texas, whether he was under indictment in Louisiana. He stated to said party that he (appellant) was not under indictment. Again, he testified that he had been told that he was wanted in Louisiana "for murdering" a construction foreman.

The foregoing constitutes the testimony offered by the State in an effort to impeach appellant by proving that an indictment for murder was pending against him. Said testimony goes no further than to show that appellant had heard that he was under such an indictment. Over appellant's objection, the district attorney, in argument to the jury, used language as follows: "That's the man you are trying. He's under indictment now for murdering a section foreman in Louisiana." Appellant objected on the ground, among others, that there were no facts in evidence supporting the statement of the district attorney. The court overruled the objection. The bill of exception is qualified to show that in connection with the argument in question the district attorney stated to the jury that they might consider the fact that appellant was under indictment in Louisiana in passing upon his credibility as a witness. The testimony going no further than to show that appellant had heard that he was under such an indictment, and that the sheriff from Calcasieu Parish was present in court and had advised him that he wanted to carry him back to Louisiana, we are constrained to hold that there was not sufficient evidence to warrant the district attorney in stating as a fact that appellant was under such an indictment. If an indictment had been returned against appellant at a time not too remote, charging him with murder, it was proper to make proof of such fact for the purpose of impeaching him, he having taken the witness stand in his own behalf. In that event, it would have been proper for the district attorney to state to the jury that such fact might be taken into consideration by them in passing upon appellant's credibility as a witness. The argument was obviously prejudicial, and we are constrained to hold that reversible error is presented.

Appellant objected to the questions of the district attorney concerning the pendency of an indictment against him in Louisiana on the ground of remoteness. The objection was overruled, and the State was not required to fix the time. It is

inferable from the record that said indictment had been returned more than ten years prior to the present trial. Appellant testified that he was in Louisiana in 1921. Further, he testified that the sheriff from Calcasieu Parish, Louisiana, told him that there was an old indictment pending against him in said parish. While the bills of exception on the question are probably not sufficient, it is observed that the trial court should have required the State to fix the time of the return of the alleged indictment in Louisiana.

Appellant excepted to the court's charge on threats. The charge appears to be too restrictive, in that it required the jury to find that the deceased had threatened appellant, and, further, to find that the deceased was about to carry out such threats. The question was whether appellant believed that the threats had been made and whether it reasonably appeared to him, viewed from his standpoint at the time, that deceased, by some act then done, manifested an intention to then execute such threats. Branch's Annotated Penal Code, Sec. 2084.

Appellant made a motion to quash the indictment on the ground that he had been discriminated against in the selection of a grand jury. It appears from the testimony heard on the motion that for more than forty years no negro had been selected by the jury commissioners, except on one occasion. This negro had been excused by the court. The record shows that Taylor County has a population of approximately 38,000, about 1,600 of whom are negroes. Whether any of the negroes possess the statutory qualifications for grand jury service was not shown. Hence the case of Norris v. Alabama, 294 U. S., 587, cited by appellant is not deemed controlling. As the matter is presented in the present record, the opinion is expressed that the motion to quash was properly overruled.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Our re-examination of the record in the light of the State's motion for rehearing leads us to the conclusion that the proper disposition of the case was made in the original opinion.

The motion for rehearing is overruled.

*Overruled.*