JOHN WESLEY SEALS V. THE STATE.

No. 20775. Delivered March 20, 1940.
Rehearing Denied April 24, 1940.

The opinion states the case.

*Lester S. Cross* and *Al L. Crystal,* both of Caldwell, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appellant was convicted in Burleson County for the murder of A. C. Walton with malice, by shooting him with a gun, and his punishment was assessed at twenty years in the penitentiary.

The offense is alleged to have been committed on the 20th day of May, 1938.

This is the second appeal. The opinion in the former appeal will be found in 137 Texas Crim. Rep., 23, 127 S. W. (2d) 908. The facts therein stated will not be repeated.

Both parties were negroes. The deceased was a merchant, and the appellant's wife had worked for him. Jealousy had arisen on the part of the appellant and the contention is made that he killed the deceased because of his conduct with his wife. He also details circumstances under which he claims the right of self-defense. Appellant had attempted to talk with the deceased but it seems that for some reason the deceased evaded him. The reason for his doing so is immaterial. At the time of the killing appellant waylaid the deceased, placed an obstruction on the highway to stop his car, and having armed himself, he approached the deceased and demanded a conversation. If deceased had, under such circumstances, attempted to shoot the appellant and had succeeded in doing so, he would appear to have an issue of self-defense behind which would be more forceful circumstances than those supporting the appellant. Both parties could not have that right. If the jury so viewed it in finding the appellant guilty, they were warranted by the evidence in reaching that conclusion.

Among the principal contentions in this appeal is that raised by Bills of Exception Nos. 1 and 2 which complain that the appellant has been discriminated against in that he is a man of the colored race; that he was indicted by a grand jury from which men of his race had been excluded and that he was tried by a jury exclusively of white men. The complaint is that the appellant had been discriminated against and not that his race was so treated. The grand jury returning the in-

dictment had been selected before the commission of the crime, and there could have been nothing personal in selecting the grand jury. Assuming that it was meant to complain that the negro race had been discriminated against, we have carefully examined the record and are unable to find any evidence of such discrimination. The jury commissioners testified that in selecting the jury they were concerned only with following the court's instruction to get good and capable grand jurors and that they did so without any thought of race, color or class of individuals; that they picked men from various sections of the county, taking from each community the best man for service whom they knew. One commissioner said that he did not know a negro would be qualified under the law to serve on the jury, otherwise he would have given consideration to selecting one. This gives rise to the suggestion that commissioners charged with the duty of selecting both the grand jurors and petit jurors may need to have instructions from the court as to who are qualified. A misconception of the law might, under frequent circumstances, result in wastful litigation.

It is presented in these bills that about fourteen per cent of the poll taxes paid in Burleson County are by negroes, but there is nothing to show how many of these are qualified jurors. Neither is there any intimation in the record that any influence was exercised, that any device was used, or any particular precaution taken, to exclude negroes from jury service. The testimony which the appellant produces, in fact, affirmatively shows that the subject was not in the minds of the jury commissioners who, under the facts of this case, appear to have been wholly responsible for the jurors selected. Each one asserts that the subject was not discussed or considered by either of them; that they had no prejudice against jury service by negroes or any class of persons, and that their object and intentions were to follow the law as they understood it.

This question has been frequently before this court, and it has been considered by the Supreme Court of the United States in recent decisions, namely, Pierre v. Louisiana, 306 U. S. 354-362, 83 Law Ed. 757; Norris v. Alabama, 294 U. S. 587-599, 79 Law Ed. 1074. On such authorities, we have concluded that no discrimination is shown. Langrum v. State, 78 S. W. (2d) 973; Brown v. State, 94 S. W. (2d) 169; Mitchell v. State, 105 S. W. (2d) 246; Ryan v. State, 123 S. W. (2d) 659; Lugo v. State, 124 S. W. (2d) 344; Hamilton v. State, 135 S. W. (2d) 476.

The various bills of exception are overruled with the exception of Bill No. 6, which complains of the refusal to admit the testimony of Francis Potts to the effect that the deceased had come to his home at 5105 Eleventh Street, Houston, Texas, on Sunday night previous to the homicide and visited the appellant's wife in her room from two o'clock in the morning and through the rest of the night. Appellant had testified that Jack Liston had given him information prior to the tragedy that the deceased had spent the Sunday night with appellant's wife in Houston and this evidence from Francis Potts was for the purpose of corroborating the appellant in such statement. Subsequent to the trial of this case, the exact question was before this court in Stewart v. State, 135 S. W. (2d) 103. The question was there raised under identical circumstances to those before us. The evidence was held to be admissible. For the reasons there stated, we think that appellant's Bill of Exception No. 6 should be sustained. Accordingly, this case is reversed and remanded for a new trial.

## ON STATE'S MOTION FOR REHEARING.

KRUEGER, Judge.

The State, in its motion for a rehearing, seriously contends that we erred in two respects in holding that Appellant's Bill of Exception No. 6 reflects reversible error: First, because the bill is deficient, vague and indefinite; and second, because the testimony of Francis Potts, which the court, upon objection by the State excluded, was admissible. The bill within and of itself is deficient, but it refers to pages 94 and 63 of the statement of facts and makes the same a part of the bill which, in our opinion, entitles it to consideration. Jack Liston was offered as a witness by the State. He testified on his direct examination that on Sunday before the deceased was killed on Friday, he and Isaac Whiting accompanied the deceased to Houston. That on Wednesday before the killing, he had a conversation with the appellant. That in this conversation appellant told him that he, appellant, was going to kill the deceased. That appellant asked him if he, Liston, had seen his, appellant's, wife in Houston. The witness told him that he had not. On cross-examination he testified that after they arrived in Houston on Sunday he, the witness, spent the night at the home of an aunt; that Whiting spent the night at a hotel and the deceased said he was going to spend the night at the home of Rev. Lucas. The witness denied having told appellant on Wednesday or Thursday preceding the killing that the deceased had

spent Sunday night with appellant's wife at the home of Francis Potts. Appellant testified that the day before the killing the witness, Jack Liston, told him that the deceased spent the preceding Sunday night with his, appellant's, wife at the home of Potts.

From the foregoing statement it is obvious that the testimony of Liston and that of appellant was in sharp conflict. Appellant then offered Francis Potts as a witness, by whom he would have proved, if permitted by the court, that appellant's wife was rooming at Potts' home; that on Sunday night preceding the Friday of the killing, the deceased came to the Potts' home and asked to see appellant's wife. That he, Potts, admitted deceased and directed him to the room occupied by appellant's wife where he spent the night with her, but he did not inform appellant or any other person of this occurrence.

It was the State's theory that appellant killed the deceased without cause or provocation. It was appellant's contention that he killed the deceased because the deceased had alienated his wife's affection and broken up his home.

In view of the sharp conflict in the testimony on a vital issue in the case, it occurs to us that the excluded testimony became material in that it gave weight and verity to appellant's testimony and tended to sustain his contention of illicit relations existing between his wife and deceased and that he had been informed thereof. With this testimony before the jury, is it not reasonable to conclude that the jury might have given more credit and greater weight to the appellant's theory and found him guilty of murder without malice instead of murder with malice?

In the case of McAnear v. State, 43 Tex. Cr. R. 518, 67 S. W. 117, the appellant found an unsigned letter in a dresser drawer of his sister's room. The general tenor thereof convinced appellant that a married man had written it. On the day of the killing appellant went into the store where the deceased was employed and discovered the deceased talking with his, appellant's, sister. This led him to believe that the deceased was the author of the unsigned letter. On the day of the killing the deceased invited appellant and his brother to go home with him. After they arrived at home, the deceased picked up a feather bed and cover, remarked as he did so, that it was too hot to sleep in the house and dragged it out on the gallery. Appellant said to the deceased, "We did not come here to stay all night.*** We have reason to believe that you are the party that has been writing to our sister, and who stayed with her all of Tuesday

night." To which deceased replied, "Yes, by God; it was me, if you want to know the truth about it!" Whereupon appellant shot him five times. Appellant testified he shot deceased because he had ruined his sister, etc. Upon the trial appellant offered to introduce in evidence certain letters, together with a "cundrum" found on the body of the deceased shortly after he was killed. The letters appeared to be in the handwriting of the deceased and one, at least, was in the handwriting of the appellant's sister. The court excluded these letters on the ground that appellant had no knowledge of the letters prior to the killing; and appellant's sister stated that she had not seen either of the letters except the one she had written. This court in passing on the question said: "This testimony, as stated, if true, would have demonstrated to the jury, beyond any reasonable doubt, that the cause of the killing was the improper relation of deceased with appellant's sister. The fact that she testified to said relationship upon the trial, and the fact that appellant testified that deceased admitted the relationship to him, would not be a basis or cause for the exclusion of letters found in his trunk or in his possession, where such letters are identified as having been written by deceased or by appellant's sister. Said testimony would be strong and cogent corroboration of the oral testimony adduced by appellant * * * and clearly should have been admitted."

In support of what we have said we refer to Bereal v. State, 88 Tex. Cr. R. 138, (141) ; Powers v. State, 88 Tex. Cr. R. 457, (460).

Having reached the conclusion that the case was properly disposed of originally, the State's motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.