314 So.2d 226 (1975)
Frank A. SMITH, III, Appellant,
v.
STATE of Florida, Appellee.
No. 74-1219.
District Court of Appeal of Florida, Fourth District.
May 30, 1975.
Rehearing Denied July 8, 1975.
*227 Mark Hawes, Tampa, and Robert Buonauro and James N. Powers, Orlando, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Stephen R. Koons, Asst. Atty. Gen., West Palm Beach, for appellee.
WALDEN, Judge.
Defendant was tried by jury and convicted of second degree murder. He appeals. We affirm.
Defendant was charged with the murder of his twenty year old girl friend. He plead not guilty and not guilty by reason of temporary insanity.
It is without dispute, based on proof and stipulation, that defendant did, in fact, kill the victim by striking her head with his fists and a fifteen pound wooden stereo *228 speaker. And so the real trial issue was whether defendant should be exonerated by reason of temporary insanity.
The death events took place in the bedroom of defendant's apartment. The victim expired without making a statement. Defendant did not testify. There were no eyewitnesses or eavesdroppers. Another couple was present in another area of the apartment. This couple knew that defendant and the victim were together in the bedroom out of their sight. While they heard sounds of talking and crying and a commotion, they did not know what was said or what happened between the parties. The sounds and circumstances were not sufficient to cause alarm or investigation by the couple.
Medical experts testified for the defense to the effect that the defendant was temporarily insane at the time of the killing. They based their opinions in varying degrees upon interviews with the defendant, including what defendant told them about the crime events. Such statements, made after the fact, by defendant to the doctors comprised a part of their examination and evaluation and suggested that he came from a family of achievers while he was an underachiever and thereby subject to stress. Further, in this line, it is defendant's briefed assertion that defendant told the doctors that "on the date of the fatal encounter, [the victim] went out with Mike Jones. That, in fact, she went to bed with him. That she awakened [defendant] late for their date and conveyed to him her misconduct with Jones just immediately before. This set [defendant] off into a disassociative reaction during which he killed [the victim]." (Emphasis supplied.)
While we will assume for purposes of this appeal that defendant established the foregoing in his conversations with the doctors, the evidence doesn't conclusively show that the defendant established in his conversations with the doctors that the victim told the defendant at the time that she had just previously had sexual relations with another. To illustrate, Dr. Gutman testified:
"Q In your discussions with Frank, did he ever have any conscious recollection of any statement from [deceased] concerning whether or not she had had a sexual experience with her [other] date of that day.
"A He denies her telling him of there being any sexual experience... ."
Dr. Gilbert testified:
"Q And can you tell us whether Frank A. Smith, III, was informed by [decedent] during a period that he cannot presently recall, that she had relations with that man that day?
"A Well, yes, this was discussed with her, and he described interrogating her, questioning her about her activities.
* * * * * *
"Q Can you tell us, sir, whether [decedent] related, or whether Frank knew that she had had sexual relations that day with Mr. Jones?
"A Yes.
* * * * * *
"Q ... And the question here is, what did Frank tell you, and what you believe he knew at the time of the occurrence, what he related to you on this subject.
"A Well, in essence, he had asked her if she had been involved with a fellow she had gone to the golf tournament with. And she started to tell him about it, and then he said he put his fingers to her lips, and then told her not to talk about it, because he actually didn't want to hear about it.

*229 "Then he questioned her again, apparently, disturbing him, and she began to cry, and got quite upset about it.
"And it was at this point he felt that she was  had been involved. But he was very disturbed by it, and then he didn't want to hear about it.
"Q Has he repressed this information? Has his mind repressed this information?
"A It would appear that way, yes... .
* * * * * *
"Q Did you arrive at an opinion as to whether Frank knew that Debbie had been involved with the man that night?
"A Yes.
"Q What is that opinion?
"A That he knew that, yes.
"Q Based on what she told him?
"A Yes."
Going back to what the defendant told the doctors as to the bedroom events; what happened; what was said; and his reaction; these statements were used by the doctors in evaluating the defendant's mental condition. However, what the defendant stated to the doctors is not evidentiary as concerns the factual truth which may be contained in them. Clearly, the doctors' testimony as to what the defendant hold them of the crime events cannot constitute evidence that such events actually occurred. And further, the expert opinion may be rejected if the facts upon which it is based are not proved.
In Jones v. State, 289 So.2d 725 (Fla. 1974), the Supreme Court stated:
"The court below should have allowed the psychiatrists to testify as to their opinions without relating what the defendant told concerning the alleged facts of the case. If, through the use of hypothetical questions or other questions on cross-examinations, such facts should be elicited from the psychiatrists, the jury should be given an instruction in accordance with the ... rule found in Parkin v. State ... ." (Emphasis added.) Id. at 728.
In Parkin v. State, 238 So.2d 817 (Fla. 1970), the Supreme Court held:
"Psychiatric examinations are greatly dependent upon testimonial utterances of the person examined. However, any statements obtained from the patient by the doctor are used as evidence of mental condition only, and not as evidence of the factual truth which may be contained in them." (Emphasis added.) Id. at 822.
The trial court correctly portrayed this principle of law when he ultimately instructed the jury:
"You should consider each expert opinion received in evidence and give it the weight you think it deserves, and you may reject it entirely if you find that the alleged facts upon which it is based have not been proved or that the reasons given in support of the opinion are not sound.
"Psychiatric examinations are greatly dependent upon testimonial utterances of the person examined. However, any statements obtained from the patient by the doctor are used as evidence of mental condition only, and not as evidence of the factual truth which may be contained in them." (Emphasis added.)
The defendant, in his briefed language, recognized in harmony with the foregoing that, "[i]t is too fundamental to admit of argument that if doctors are to be permitted to give expert opinions, the facts on which they are based should and must be *230 proven." Based thereon, defendant proffered certain testimony:
(1) Defendant's father's testimony as to defendant's background, family associates and the family relationship with the victim.
(2) Testimony of Mike Jones that he had sexual relations with the victim on the afternoon in question.
(3) Testimony that the autopsy revealed the presence of male semen in the victim's body.
The trial court rejected this testimony and this is the fundamental ruling upon which the defendant's first four points are based.
Defendant's first four points on appeal were argued together:
I. The trial court's exclusion of the proffered testimony of Ley H. Smith re appellant's background, associations in his community, his family background, his association with deceased, and other facts, denied appellant the right to establish the necessary predicate for the opinions of his doctors that he was temporarily insane at the time of the homicide.
II. The trial court's exclusion of the proffered testimony of Mike Jones re the sexual relations he engaged in with deceased, immediately prior to her fatal encounter with appellant denied appellant the right to establish the necessary predicate for the opinions of his doctors that he was temporarily insane at the time of the homicide.
III. The trial court's exclusion of the testimony of Dr. Hegert that he found male semen in the vagina, the rectum, and the mouth of the deceased at the autopsy denied appellant the right to establish the necessary predicate for the opinions of his doctors that he was temporarily insane at the time of the homicide.
IV. In the background of the exclusion of the testimony of Smith, Jones, and Dr. Hegert, the court's instructions regarding the facts on which the opinions of the doctors were based, and the opinions themselves was fundamental error, denying appellant the right to due process of law and equal protection of the law, under the Florida Constitution. (Sections 2 and 9 of Article I) and his right to a jury trial on the facts of his defense under the Florida Constitution (Section 22, Article I) as guaranteed and protected under the Fourteenth Amendment to the Federal Constitution.
And so if we stopped right here with what we have said, it would seem plain that the appeal contains at least surface merit. This is true because, in summation, it would appear that defendant was prevented from proving up at least a part of the factual predicates for the doctors' opinions with jury being told that if such predicates were not proven it could disregard the doctors' opinions. However, there is more  much more  in the way of a fatal flaw in defendant's position. The flaw which we now begin to discuss was in nowise contained in defendant's appellate points and neither was it explored by the State.
Again, the essential theme of the defense was that the victim had sexual relations during the afternoon with another; that she went to defendant's bedroom and told the defendant about her sexual misconduct; that this statement of her misconduct made by his sweetheart set the defendant, being then under family stress and pressure, off into a dissassociative reaction during which time he killed the victim; and that during these events defendant was temporarily insane.
It cannot be overemphasized  this being the pivotal point of our decision  that there was no evidence or proffer of same to establish what was said or what transpired between the parties in the defendant's bedroom during the time in question. There was no evidence that the victim ever told the defendant that she had *231 just previously engaged in sexual relations with another. There was no evidence as to whether the killing was provoked by the victim or otherwise. There was no evidence as to whether the killing was accomplished in a rage or dispassionately or under stress conditions. Thus, neither the jury, the trial judge, nor this court knows the circumstances that preceded the fatal blows. Further, the foregoing omissions are fatal as concerns the opinions of the medical experts. Why? Without them, the most essential fact upon which they based their opinions was not proved regardless of the already mentioned proffers about which complaint was made.
To zero in upon this most fundamental flaw. The keystone of the defense is the proof that the victim told the defendant that just previously she had engaged in sexual relations with another. Without this being first proved, the defense collapses and the peripheral facets of the defense become simply irrelevant. The defense simply melts into nothingness. This is the happening that the defense says triggered the insanity and the killing. It really matters not whether the victim had sexual relations or not  what is important is whether she actually told the defendant that she had just prior to the murder. For instance, if she had such relations and didn't tell the defendant about it, then there would be no basis for the claim of disassociative reaction. Conversely, if she didn't have such relations, but told defendant she had, there very well could be a basis for the insanity defense. So the establishment of the fact that she had engaged in sexual intercourse that afternoon is totally irrelevant and immaterial unless it is first established that she actually conveyed that fact to the defendant.
Thus, having no evidence as to the truth of any revelation to defendant, the evidence of the victim's acts of sexual intercourse just prior to her fatal encounter with defendant is inadmissible. In Palmore v. State, 283 Ala. 501, 218 So.2d 830 (1969), a husband killed his wife, and plead not guilty by reason of insanity. Defendant urged as error a denial by the trial court to allow him to elicit from certain witnesses evidence of the wife's infidelity. The court held:
"In the instant case, defendant was permitted to testify that his wife had told him of her infidelity with Sam Henderson. At the time Grafth Palmore and Emma Jean testified, however, defendant had not testified and it had not been shown that the fact of the wife's infidelity with Sam Henderson, or anyone else, had been communicated to defendant or was known to him. Since it had not been shown, that the fact of the wife's misconduct was known to defendant when the questions were propounded to Grafth Palmore and Emma Jean, the court will not be put in error for sustaining the objections.
"Unless the fact of the wife's infidelity had been communicated to defendant before the homicide, that fact would not in anywise affect his mental condition." 218 So.2d at 837.
In State v. Moraga, 82 N.M. 750, 487 P.2d 178 (C.A. 1971), the details of a rape committed by witness (defendant shot a bystander while aiming at witness) were not permitted as evidence of the defendant's state of mind:
"[T]he details of the rape could not have been pertinent to the defendant's state of mind when there is no showing, and no claim, that defendant knew or had heard of any of the details." 487 P.2d at 180.
In People v. Bowen, 165 Mich. 231, 130 N.W. 706 (1911), the court held:
"We are of the opinion that it was not competent to show facts indicating the infidelity of the wife where such facts were not shown to have come within the personal observation of the defendant." 130 N.W. at 707.
*232 and in Bereal v. State, 88 Tex.Cr.R. 138, 225 S.W. 252 (1920) the court stated:
"When a homicide occurs, and the theory of the defense is that same was committed as the result of passion, caused by insulting words or conduct of the deceased ... it is necessarily true that it must be shown that it was known or communicated to the accused that such insult had been given; ..." 225 S.W. at 252.
See Barnes v. State, 31 Ala.App. 187, 14 So.2d 242 (1943), in which evidence of the deceased's relationship with defendant's wife was found to be relevant to defendant's claim of insanity  when defendant had testified he was told of the relationship, and 2, Wigmore on Evidence § 231 (3d Ed. 1940):
"Accordingly, circumstances calculated to induce this mental condition [insanity] may always be admitted to evidence the probability of such affection; the only limitation is that the circumstance be in itself capable in some degree of producing such an effect, that it came to the person's knowledge, ..."
While what we have just said is dispositive of the appeal, we treat the matter further as a matter of completeness.
If it be assumed that the victim did in fact tell the defendant that she had just engaged in sexual relations, would the proferred evidence of the actual fact of sexual relations be admissible? It is our view that same would be relevant and properly admissible. In Barnes v. State, supra, the court stated:
"Any fact which has a causal connection or logical relation to another fact, so as to make the other fact either more or less probable, is competent, or is relevant, to prove it." 14 So.2d at 244.
See Seals v. State, 139 Tex.Cr.R. 162, 139 S.W.2d 105 (Tex. 1940); State v. Moraga, supra; Palmore v. State, supra.
On the other hand, though, we recognize that there is authority to the contrary. People v. Bowen, supra; State v. Greene, 152 N.C. 835, 68 S.E. 16 (1910); State v. Flory, 40 Wyo. 184, 276 P. 458 (1929); State v. Boston, 233 Iowa 1249, 11 N.W.2d 407 (1943). These cases generally hold that, even though defendant has testified to his knowledge of a certain event allegedly influencing his mental condition, the factual nature of the information is irrelevant on the grounds it is only defendant's frame of mind that is relevant.
We hold with reference to appellant's Points 1, 2 and 3, that the failure of proof that the provocative information was conveyed to defendant made the testimony concerning sexual relations on the part of the victim and the testimony concerning family stress inadmissible because such testimony was neither logically nor legally relevant. Drackett Products Co. v. Blue, 152 So.2d 463 (Fla. 1963); 29 Am.Jur.2d, Evidence §§ 251, 252, 254 (1967); 31A C.J.S. Evidence § 158 (1964); 13 Fla.Jur., Evidence §§ 113, 114, 116 (1957).
Point 4 lacks merit because, as we have said, the proffered testimony was inadmissible because not relevant and the jury instruction complained of was valid under authority of Jones v. State, supra, and Parkin v. State, supra.
Defendant's Point 5 is:
Manslaughter is the highest degree of homicide supportable by the facts in this case, even if the defense of insanity be ruled out.
This point lacks merit. While the point is eloquently argued, it is candidly conceded that there is no authority for finding a "crime of passion" as between a man and woman  not husband and wife. Furthermore, even if the "crime of passion" position were available to defendant, it is not applicable here. Its only operation is to exclude premeditation so as to reduce the crime from first degree to a lower grade *233 of murder or manslaughter, see Forehand v. State, 126 Fla. 464, 171 So. 241 (1936); Rivers v. State, 75 Fla. 401, 78 So. 343 (1918); Olds v. State, 44 Fla. 452, 33 So. 296 (1902). Here we are dealing with second degree murder, the ingredient of premeditation not being a factor. We have neither found, nor been shown, a case where by reason of crime of passion a second degree conviction has been reduced to manslaughter. Moreover, our review of the evidence leaves us convinced that the jury verdict was supported by a legally sufficient quantum of the evidence.
We someberly record that we have, with profound care, surveyed the record in light of appellate advices and on our own. We find no legal error or basis for disturbing the jury's verdict.
Affirmed.
DOWNEY, J., and SILVERTOOTH, LYNN N., Associate Judge, concur.