HALL, W. TROY, Jr., Circuit Judge:
This is a direct appeal from a judgment of the Circuit Court in and for Pinellas County adjudging the defendant Cleveland Lee Johnson guilty of murder in the first degree and a sentence of death. His appeal, pursuant to Florida Constitution Article V, Section 4(2), F.S.A., raises three *362 points of alleged error at the Trial Court level. The alleged errors are:
1. Whether the trial judge erred in reversing his ruling regarding a mistrial.
2. Whether evidence (a gun, the death weapon) was obtained as a result of an illegal search and seizure.
3. Whether the court erred in refusing to grant and give a particular jury instruction requested by the defendant.
We have reviewed and considered all points on appeal, together with all rulings, orders and instructions to the jury appearing in the appeal papers, and, pursuant to Section 924.32(2) F.S.1969 (Now Florida Appellate Rule 6.16, 32 F.S.A.), we have also reviewed the evidence to determine if it is sufficient to support the judgment and whether the interests of justice require a new trial.
For the purpose of clarification and illustration the voluminous record of factual and procedural circumstances attending this case of Murder in the First Degree may be summarized as follows:
During the month of August of 1969, Cleveland Lee Johnson and several others involved in this case got together at a spot referred to as “The Little Delicatessen” located at #769 on 22nd Street South, St. Petersburg, Pinellas County, Florida. The things reportedly done and said then and there were, to say the least, very indelicate. Some of those in attendance apparently hit the bottle excessively; engaged in illegal games of chance and became angry and belligerent when lady luck failed to support their efforts at the card table; violence flared among the patrons of “The Little Delicatessen”; ill will grew and fear or vengeance motivated several of the players to carry guns, one of which became the death weapon herein.
Cleveland Lee Johnson went to “The Little Delicatessen” Saturday night (August 23, 1969), apparently resentful toward one Nelson Barrett who had allegedly previously mistreated him by creasing his head with a bullet, and made certain statements to the proprietor of the place, Joseph Rodriguez, about killing Nelson Barrett. The proprietor, Rodriguez, attempted to dissuade him and urged him to forget it and avoid trouble. Johnson left but later returned apparently still in a belligerent mood. Eventually Johnson and Barrett, with others, again engaged in a card game (Sunday morning, August 24, 1969). It should be noted that Johnson, who complained about Barrett shooting him a few hours earlier, did not bother to seek medical attention for his alleged head wound until considerably later, after he was arrested for shooting and killing one Alfonso Gamble, a person reportedly unknown to Johnson.
The evidence is clear and convincing that there was ill will of long standing between Cleveland Lee Johnson and Nelson Barrett and that Johnson went to “The Little Delicatessen” looking for Barrett; that he carried along his pistol for the purpose of shooting Barrett; that he did shoot Barrett; that one of the bullets fired by Johnson at Barrett went on and hit Gamble in the heart. Gamble died from the wound inflicted itpon him by Johnson. Gamble was not a participant in the fight between Johnson and Barrett. Gamble was not known to Johnson. There was no ill will between them. Gamble simply happened to be in the wrong place, for him, when he was hit by the bullet Johnson intended for Barrett.
During the fracas Johnson succeeded in hitting his adversary Barrett with several bullets, but did not succeed in killing him, as he obviously intended. After Barrett was shot down, Johnson left “The Little Delicatessen” and went to an automobile parked in front of the place. Barrett got up, went to the front door and fired several shots at Johnson but did not score a hit on him at that time. He had, the night before, creased Johnson’s skull with a bullet. John *363 son fled the scene in the borrowed automobile.
The police were alerted and a pick-up order was issued for Johnson. An alert officer in a patrol car observed the borrowed car pull up at Johnson’s home. As Johnson was getting out of the car on the passenger side, an officer identified himself and told Johnson that he was under arrest for murder. The policeman proceeded to search Johnson for weapons whereupon Johnson complained that he had been shot in the head. The officer, demonstrating a commendable humanitarian consideration for his prisoner and not knowing the nature or extent of Johnson’s wound, without delay rushed Johnson to the hospital for medical attention. Johnson was subsequently taken to jail. Meanwhile another officer who had been stationed at and remained with the borrowed “getaway car” looked through the glass and saw a pistol protruding about three inches from under the front seat on the driver’s side of the automobile.
The officer stationed by the car did not open it to remove the gun he observed, but waited until the arresting officer returned from his humanitarian trip to the hospital. The arresting officer who removed the pistol was not the one who discovered it, but simply followed the information and direction of the attending officer who discovered it by a plain view of it through the auto glass.
The gun was ultimately received in evidence over objection of the defendant. A ballistics expert testified that the death bullet recovered from the body of Alphonso Gamble was fired from the gun found in the getaway car driven by Johnson.
As to alleged error Number 1 on appeal:
Whether The Judge Erred In Reversing His Ruling Regarding A Mistrial.
We find thd theory and contention of the defendant on this point is not well founded in law and the argument offered in support thereof is not persuasive. We hold that the denial by the Trial Judge of the motion for a mistrial under the circumstances reported in this case was proper.[1]
As to alleged error Number 2 on appeal:
Whether Evidence (A Gun, The Death Weapon) Was Obtained As A Result Of An Illegal Search And Seizure.
The factual circumstances reflected by the case record herein considered in the light of the applicable rules of law and procedure require that we reject the theory and argument of the defendant and we hold that the evidence (the death weapon) was legally seized and properly received in evidence.[2]
As to alleged error Number 3 on appeal:
Whether The Court Erred In Refusing To Grant And Give A Particular Jury Instruction Requested By Defendant.
The requested instruction was as follows :
“DEFENDANT’S REQUESTED JURY INSTRUCTION NO_”
“CHARACTER OF DECEDENT— The Court charges you that the character of the decedent is a proper matter for your consideration, and you should consider it in connection with all the other evidence in the case, and should give to it such weight as you may deem proper in connection with the whole of the testimony, in determining whether or not the said decedent, at the time he was shot, acted in such a manner as to give the defendant, as a reasonable prudent man, reasonable cause to apprehend such *364 danger of death or great bodily harm at the hands of the decedent as to justify the defendant in shooting on the ground of self-defense.”
It should be noted that the requested instruction referred to the character of the deceased, Alphonso Gamble, a stranger to the defendant and whose character was unknown to the defendant. The requested instruction was obviously defective and properly refused by the Trial Court. Moreover, the subject matter of the instruction was adequately covered by other instructions which were given by the Court to the jury.
On this point the law is clear and we must reject the theory and argument of the defendant and hold that the requested instruction was properly denied by the Trial Judge.[3]
It is basic in our criminal law that instructions must be considered in relation to each other and all together and not in isolation. Instructions in a capital homicide case must give the jury a full, fair, complete and correct statement of the rules of law applicable to the case, but material errors and inaccuracies in various charges of the Trial Judge’s complete instructions to the jury may be corrected and cured by other charges given, and if it appears from the whole record that the jury could not have been misled by the instructions, then the conviction should not be reversed on account of any alleged inaccuracy of a single charge.
We have carefully studied the complete instructions given by the Trial Judge in this case and find them, when considered all together, to be adequate under the law.
The facts gleaned from the record in this case show a commendable example of alert, efficient and well co-ordinated police work, tempered with a sincere demonstration of humanitarian consideration for the wounded defendant under arrest.
We find and determine that the evidence is sufficient and that no prejudicial error has been demonstrated and that the interests of justice do not require a new trial. We therefore affirm the judgment and sentence of the Trial Court.
ROBERTS, C. J., ERVIN and CARLTON, JJ., and MASON, Circuit Judge, concur.
BOYD, J., dissents with opinion.
DREW (Retired), J., dissents with opinion and concurring specially with dissenting opinion of BOYD, J.

. Williams v. State, Fla.App., 243 So.2d 215;
F.S.A. Section 924.33;
Salter v. State, 152 Fla. 284, 10 So.2d 809.

. Vol. 29 Fla.Jur. 226, “Search & Seizure”, § 12;
Fletcher v. State, Fla.App., 168 So.2d 162;
Boim v. State, Fla.App., 194 So.2d 313;
Blake v. State, Fla.App., 112 So.2d 391;
State v. Smith, Fla.App., 193 So.2d 23.

. Williams v. State, Fla.App., 243 So.2d 215;
Tootle v. State, 100 Fla. 1248, 130 So. 912.