578 So.2d 343 (1991)
Christopher BILLEAUD, Appellant,
v.
STATE of Florida, Appellee.
No. 88-3216.
District Court of Appeal of Florida, First District.
April 4, 1991.
Michael E. Allen, Public Defender, and Randolph P. Murrell, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and James W. Rogers, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Christopher Billeaud appeals his convictions of first degree murder and armed burglary of a dwelling. He contends that the trial court erred (1) in "death qualifying" the jury and (2) in excluding proffered testimony that while they were residing in Louisiana prior to the incident that led to his convictions, he had periodically accused his wife of engaging in extramarital affairs with other men. We affirm.
Both the United States Supreme Court and the Florida Supreme Court have decided the first issue contrary to appellant's position, so we affirm on this point without further discussion. Lockart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); Tompkins v. State, 502 So.2d 415 (Fla. 1986), cert. denied 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 781 (1987).
The facts relevant to the second issue are as follows. Appellant and his wife were married and resided in Louisiana approximately five years before they moved to Tallahassee in 1987. Two children were born of the marriage. In May of 1988, while still married to and living with appellant, Mrs. Billeaud began "dating" Roscoe Miller, the victim in this case. Despite appellant's efforts to prevent his wife from seeing Miller, Mrs. Billeaud continued to date Miller and occasionally stayed out with him all night. In June of 1988, Mrs. Billeaud and the children moved out of the marital home and into a mobile home with Miller. During this period, appellant threatened to kill Miller, his wife, and himself. Also during this period, Mrs. Billeaud filed for a divorce.
On June 25, at about 1:00 a.m., while Mrs. Billeaud and Miller were asleep on the couch in the living room of the mobile home, her two brothers stepped out to the back of the mobile home to smoke a cigarette. *344 Appellant charged through the front door holding a "Rambo survival knife." He repeatedly stabbed Miller, saying not a word throughout the attack. Mrs. Billeaud screamed, and her brother came back inside the home in time to see Miller with blood all over his back and appellant holding the knife in a stabbing position. He stated that appellant's teeth were clenched and he had a "devil look" on his face. Appellant left and ran back toward his truck. The brothers gave chase but did not catch him. They then took Miller to the hospital, and he later died in the emergency room.
The state charged appellant with first degree murder (premeditated and felony murder) and armed burglary of a dwelling. Prior to trial, the state filed a motion in limine seeking to exclude any evidence of Mrs. Billeaud's extramarital affairs that occurred prior to her and appellant's move to Florida. Defense counsel argued that the past affairs were central to appellant's defense that the killing was a crime of passion, but the court granted the motion on the ground that such evidence was irrelevant. During trial, the court permitted the defense to proffer the wife's testimony regarding appellant's accusations of her misconduct while they lived in Louisiana. Following this proffer, the court reaffirmed its ruling on the motion in limine, making it clear that this evidence could not be adduced by cross-examination of the state's witnesses or by witnesses called in the defense case. By special verdict, the jury found appellant guilty of first degree felony murder, but not premeditated murder, and guilty of armed burglary of a dwelling.
With regard to the trial court's exclusion of evidence of extramarital affairs of appellant's wife, including the proffered testimony, appellant argues that because he believed she has engaged in such affairs, including one with the victim, he was in a blind, unthinking, sustained rage and thus lacked the capacity to premeditate the killing or to form the conscious intent necessary to support a conviction for burglary. He maintains that the excluded evidence tended to show the years of frustration that he experienced and that his rage may have been much greater than the jury could have expected. Thus, he concludes, the trial court denied his right to a fair opportunity to defend against the state's charges, citing Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).
The state responds with the argument that the excluded evidence was intended to place appellant's wife on trial by asserting the unwritten law that a husband may kill his wife's lover. However, even assuming the exclusion of this evidence was error, the state argues that such error was harmless and the evidence cumulative, given the fact that the jury had already heard evidence that appellant was jealous of his wife and objected to her relationship with the victim.
We agree with appellant that the trial court erred in granting the state's motion in limine regarding the defendant's evidence that he believed his wife had participated in extramarital affairs and had accused her of such conduct prior to her involvement with Miller. It is important to note that the trial court granted the state's motion in limine and excluded this evidence on the ground that it was "totally irrelevant to the case at hand." As explained by the judge to defense counsel, evidence of these matters could not be presented to the jury through cross-examination of witnesses during the state's case or by witnesses called during the defense case. This was error for the following reasons.
Evidence is relevant if it tends to prove a material fact. § 90.401, Fla. Stat. (1987). Evidence of the defendant's belief regarding Mrs. Billeaud's extramarital affairs tended to prove a material fact central to appellant's defense  that the affair with Miller was the "straw that broke the camel's back" and sent appellant into such a rage that he entered the mobile home and killed Miller. It is error to deny the admission of evidence that tends, in any way, to prove the defendant's theory of innocence of the offenses charged. Moreno v. State, 418 So.2d 1223, 1225 (Fla. 3d DCA 1982). The state has not shown any substantial or *345 potential prejudice to its case that could have resulted from admission of the excluded evidence, and we conceive of no such prejudice. On the other hand, the excluded evidence could have significantly strengthened appellant's theory of defense. Consequently, the trial court abused its discretion in excluding this evidence.
We are persuaded, however, by the state's argument that the evidence was to a large degree cumulative with respect to any impact this evidence might have had on the jury's consideration of appellant's guilt. We note also that, while we do not suggest reversible error is cured by a defendant's failure to testify, the same evidence was nevertheless available from appellant himself, who declined to testify. We conclude beyond a reasonable doubt that the error did not affect the verdict. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). The judgment of conviction is, therefore,
AFFIRMED.
SMITH, J., concurs.
MINER, J., specially concurs with opinion.
ZEHMER, J., concurs and dissents with opinion.
MINER, Judge, specially concurring.
I concur in the result reached in this case.
ZEHMER, Judge (concurring and dissenting).
I concur in the majority decision in all respects save one. Based on the harmless error test articulated in State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), as applied and enforced in Lee v. State, 531 So.2d 133 (Fla. 1988), approving 508 So.2d 1300 (Fla. 1st DCA 1987), I am unable to conclude beyond a reasonable doubt that the error in granting the state's motion in limine to exclude certain testimony[1] did not affect the jury's verdict.
NOTES
[1] The state's motion requested the court to exclude all testimony, "on either direct examination or cross-examination, concerning any alleged extra-marital affair" by the defendant's wife "prior to [their] joint move to Florida in November 1987", a date just eight months before the charged offense occurred, on grounds that such events "would be absolutely irrelevant and would tend to confuse the issues presented for the jury's deliberation." The issue presented, therefore, is not limited to the proffered cross-examination of appellant's wife but extends to any testimony that could have been given by any witness, including the defendant himself.