652 So.2d 887 (1995)
Barrant D. DOUGLAS, Appellant,
v.
STATE of Florida, Appellee.
No. 93-2319.
District Court of Appeal of Florida, Fourth District.
March 15, 1995.
Rehearing Denied April 20, 1995.
*888 Richard L. Jorandby, Public Defender, and Margaret Good-Earnest, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, Myra J. Fried and Melvina Racey Flaherty, Asst. Attys. Gen., West Palm Beach, for appellee.
KLEIN, Judge.
Appellant was convicted of second degree murder because he killed his wife, in the midst of an argument, by striking her repeatedly with a sugar cane machete. He argues that the trial court erred in not allowing him to introduce the evidence of their stormy 16 month marriage because it was relevant to demonstrate that the killing was a crime of passion, and could have persuaded the jury to convict him of manslaughter. We affirm.
The trial court described this killing, in his findings of fact on which he grounded a departure sentence of life imprisonment, as follows:
On January 11, 1992, following a domestic dispute between the Defendant and the victim, the Defendant literally "chopped" the victim to death. The instrument used in this brutal killing was a cane knife designed to be used more like an axe than a knife. The medical examiner testified that at least 30 and probably 40 blows were inflicted on the victim. The photographs in evidence depict horrible mutilation of the upper body, neck, head, hands and arms of the victim by the Defendant. An eyewitness testified that after the victim fell to the ground following the first several blows to her arms, hands and upper body, she pleaded for someone to help her. Ignoring these pleas for her life, the Defendant continued to stand over the victim and chop her like he would a log.
The issues we must decide are: (1) whether the evidence of the stormy marital relationship was inadmissible because it would have constituted an improper attack on the character of the victim; (2) whether crime of passion evidence, the purpose of which is to refute premeditation, is admissible where the defendant is not charged with first degree *889 murder; and, (3) whether this killing qualifies as a crime of passion.
On the day of the killing, the police were called as a result of a domestic argument which had arisen out of a dispute between appellant and his wife regarding long-distance telephone charges. When an officer arrived around 6:30 PM things had calmed down, but appellant's wife wanted appellant to move out. Appellant agreed to leave and moved his clothing and belongings to the home of a friend and neighbor. There was disagreement as to who would have the use of their one car, but it was finally agreed that the appellant could take it.
The same officer received another call that day around midnight, and when he arrived he discovered appellant's wife's body in a pool of blood behind their vehicle. The medical examiner testified that she had 41 injuries resulting from a sharp object  three to the neck down to the bone  and that the wounds resulted from 30 to 32 swings, many of which were delivered with full force.
In his statement, which was played for the jury, appellant described the initial argument which resulted in the deputy's first visit as being over the telephone bill. While his wife was complaining to him about these charges, the appellant threw parts of an orange at her. Later, after the deputy left and appellant had gone to his neighbor's house, his wife removed the fuses from the car, so that the lights were inoperable and appellant could not drive it that night. When appellant discovered this, he attempted to persuade his wife to return the fuses. She refused and blew smoke on him, spit at him, and hit him. Appellant begged her to leave him alone, but she kept "bugging" him and laughing at him. In order to scare her, he picked up the machete, which was in the car, but she made him so mad that he lost control and went crazy. Appellant testified at trial, and his testimony was consistent with his statement.
Appellant's primary argument on appeal is that the trial court erred in excluding evidence of his prior marital relationship, which was violent and volatile. This evidence should have been admitted, he says, because it would have demonstrated that the killing occurred in the heat of passion, and might have convinced the jury that this was not an act evincing a depraved mind (second degree murder), but rather manslaughter.
One of our supreme court's earliest explanations of the substance and purpose of the crime of passion defense is found in Whidden v. State, 64 Fla. 165, 59 So. 561 (1912):
In a prosecution for murder in the first degree for the unlawful killing of a human being from a premeditated design to effect the death of the person killed, or any human being, the defendant under a plea of not guilty may introduce any relevant and proper evidence tending to show a lack of premeditated design in the admitted killing so as to reduce the offense charged to a lower degree of homicide.
* * * * * *
A sudden transport of passion, caused by adequate provocation, if it suspends the exercise of judgment, and dominates volition, so as to exclude premeditation and a previously formed design, may not excuse or justify a homicide, but it may be sufficient to reduce a homicide below murder in the first degree, although the passion does not entirely dethrone the actor's reason.
To support his argument that it was not merely the events of the day which were admissible, but rather the entire history of this volatile relationship, appellant relies on Auchmuty v. State, 594 So.2d 859 (Fla. 4th DCA 1992) and Billeaud v. State, 578 So.2d 343 (Fla. 1st DCA 1991). In each of those cases the defendant killed a man whom he discovered in bed with his wife, was charged with first degree murder, and alleged that the killing occurred in the heat of passion.
In Billeaud the defendant argued on appeal that evidence of prior extramarital affairs of his wife should have been admitted to fully explain his rage on the day of the killing in order to show that it was not premeditated. The First District agreed, but concluded that the evidence was cumulative and that its exclusion was harmless. Relying on Billeaud, this court held in Auchmuty that evidence of a long relationship between the defendant and the decedent, practically a father/son relationship, was erroneously excluded because it was relevant to show the *890 enormity of defendant's rage upon finding his wife in bed with the decedent.
The state makes two arguments as to why the trial court properly refused to admit this evidence. First, because the evidence constitutes an impermissible attack on the character of the victim and second, because crime of passion evidence, which is relevant to refute premeditation, is not relevant where the charge is only second degree murder. The trial court excluded the evidence because it was evidence of bad character.
Generally the character of a homicide victim cannot be attacked, unless there is an issue of self-defense. See Dupree v. State, 615 So.2d 713, 720 (Fla. 1st DCA), rev. den., 623 So.2d 495 (1993) and cases cited therein. Where the defendant is being prosecuted for a killing which occurred in the heat of passion, however, evidence of the past relationship between the victim and the defendant, which would be relevant to show why the defendant went into a rage, is admissible even if it reflects badly on the character of the victim. Auchmuty, 594 So.2d at 859, 860 (evidence of the past relationship of the victim and the defendant, which necessarily included the fact that the victim had served time in prison, was improperly excluded and required a new trial). Accordingly, we do not agree with the state that this evidence was inadmissible because it was an attack on the victim's character.
Nor do we agree with the state that the evidence was inadmissible because the charge was only second degree murder. While we recognize that the stated purpose of admitting crime of passion evidence is to refute premeditation, Forehand v. State, 126 Fla. 464, 171 So. 241 (1936) and cases cited therein, we do not agree that it necessarily follows that it is only admissible where the charge is first degree murder.
In Forehand, our supreme court reversed a first degree murder conviction for a new trial, because of the evidence that the crime occurred in the heat of passion, so that: "another jury may examine the evidence as to the suggestion of the existence of a premeditated design on the part of the accused or whether his act in killing the deceased was murder in the second degree murder or manslaughter." Id. at 244. And, in Febre v. State, 158 Fla. 853, 30 So.2d 367 (1947), in which the defendant killed a man he discovered in bed with his wife, our supreme court reversed a conviction for first degree murder because of lack of evidence of premeditation, concluding that the state had at most proved manslaughter.
If a jury can find a defendant who has killed in the heat of passion guilty of either second degree murder or manslaughter, Forehand, and if a court can reduce a first degree murder conviction to manslaughter because it occurred in the heat of passion, Febre, then it follows that crime of passion evidence must be relevant where, as here, the jury can find the defendant guilty of second degree murder or manslaughter. We find support for this conclusion in Disney v. State, 72 Fla. 492, 73 So. 598, 601 (1916), the one case relied on by appellant in which the charge was only second degree murder, not first degree murder. In Disney, in which defendant argued that the jury was erroneously instructed, our supreme court affirmed, but explained the distinction between a killing done in self-defense and a killing done in the heat of passion:
A killing in the "heat of passion" occurs when the state of mind of the slayer is necessarily different from that when the killing is done in self-defense. In the heat of passion the slayer is oblivious to his real or apparent situation. Whether he believes or does not believe that he is in danger is immaterial; it has no bearing upon the question. He is intoxicated by his passion, is impelled by a blind and unreasoning fury to redress his real or imagined injury, and while in that condition of frenzy and distraction fires the fatal shot. In that condition of mind, premeditation is supposed to be impossible, and depravity which characterizes murder in the second degree is absent (emphasis added).
Moreover, it seems to us that allowing crime of passion evidence only where the charge is first degree murder would be illogical. If that were the rule, the defendant charged with second degree murder would be *891 at a disadvantage compared to a defendant who has been charged with first degree murder. The defendant charged with the more serious crime, first degree murder, could have crime of passion evidence admitted, and a better chance for a manslaughter conviction, than the defendant charged with second degree murder. Yet, as this case demonstrates, facts which may be first degree murder to one grand jury may be second degree murder to another. We thus conclude that crime of passion evidence is admissible where the charge is second degree murder.[1]
In the present case the trial court did admit into evidence everything which occurred between appellant and his wife on the day of the killing. Although it was held in Auchmuty and Billeaud that evidence of the prior relationship of the victim and defendant is admissible to explain the rage of the defendant at the time of the killing, those cases involved classic crimes of passion in which the defendant killed a man he discovered with his wife. This case did not.
In order for the defense of crime of passion to be available there must be "adequate provocation ... as might obscure the reason or dominate the volition of an ordinary reasonable man." Forehand, 171 So. at 243 (quoting from Rivers v. State, 75 Fla. 401, 78 So. 343, 345 (1918)). See also LaFave & Scott, Criminal Law, § 7.10 (2d ed. 1986) (setting out examples of what has been held to constitute reasonable provocation for a crime of passion, all of which are far more serious than what occurred in this case). In our opinion the marital squabbles which occurred on the day of the killing in the present case do not constitute the reasonable provocation required for the crime of passion defense. See, e.g., People v. Falls, 235 Ill. App.3d 558, 176 Ill.Dec. 578, 601 N.E.2d 1276 (1st Dist. 1992). Therefore the trial court did not err in excluding the proffered evidence.
Appellant also argues that the facts relied on by the court are inadequate to support a departure sentence since they are essentially indicative of premeditation and he was not charged with first degree murder. We disagree. The departure was based on the brutality of the killing, not premeditation, and is supported by State v. McCall, 524 So.2d 663 (Fla. 1988), in which the court upheld a departure sentence for second degree murder because of the manner in which the victim was killed.
We therefore affirm both the conviction and sentence.
DELL, C.J., and GUNTHER, J., concur.
NOTES
[1] In Smith v. State, 314 So.2d 226 (Fla. 4th DCA 1975), rev. den., 345 So.2d 427 (1976), defendant was convicted of second degree murder and argued that because it was a crime of passion, this court should reduce the conviction to manslaughter. This court concluded that it was not a crime of passion, but went on to state in dicta that even if it had been a crime of passion, that would not reduce second degree murder, in which premeditation is not an element, to manslaughter. Neither the state nor appellant has cited this case, and this dicta is not persuasive to us here because it appears to be in conflict with Disney.