833 So.2d 192 (2002)
Mark VILLELLA, Appellant,
v.
STATE of Florida, Appellee.
No. 5D01-3011.
District Court of Appeal of Florida, Fifth District.
December 13, 2002.
*193 Richard J. D'Amico, Daytona Beach, for Appellant.
Richard E. Doran, Attorney General, Tallahassee, and Angela D. McCravy, Assistant Attorney General, Daytona Beach, for Appellee.
PLEUS, J.
Mark Villella appeals his conviction for the first degree murder of his wife, Exelee Villella. Villella argues that the trial court abused its discretion in excluding corroborative testimony that Exelee had been having an affair. He also argues that the trial court should have granted his request for a mistrial when the prosecutor commented to the jury about the lack of evidence that Villella presented concerning his wife's purported affair.
In his opening statement, defense counsel told the jury that Villella stabbed his wife to death. However, counsel claimed the stabbing was not premeditated but instead was a "crime of passion" committed after Villella learned that his wife was having an affair and intended to leave him and take their child with her. Villella's attorney conceded the only issue was whether the killing was premeditated first degree murder or a lower degree of homicide.
During the testimony of the state's lead investigator, the jury heard two tape recorded interviews with Villella. In the first interview, conducted three days after her disappearance, Villella told the investigator that he and Exelee had been married about two years and they had a seventeen-month old son. Exelee had not seemed like herself for the last five or six weeksshe was working late, going out with the girls after work to drink and coming home late at night. Villella also noticed that Exelee had been talking on the telephone in private. On one occasion, Villella picked up the telephone and heard a man talking to her. One night she stayed out late, apparently drank too much and a male co-worker drove her home. Villella found an intimate letter that Exelee had written to the co-worker who had driven her home. After being confronted with the letter, Exelee admitted she was having an affair, agreed to marriage counseling and promised she would not take their son away. He told the investigator that a few days later, Exelee left in the middle of the night and he had not seen her since.
In the second interview, Villella confessed to stabbing his wife to death and concealing her body. He explained that on the night of her death, Exelee told him she no longer loved him, she wanted to leave him and take their son with her. Her lover was going to give up his wife, and she would go away with him. Villella told her he could not "take" another divorce. He had already lost two children from his prior divorce; he could not lose another one. The couple went to bed but Villella could not sleep. He tried to get Exelee to *194 talk to him but she refused. Then he stated that he
[w]ent in the kitchen, got a knife, and stabbed her in the chest. She sat up, said, "I didn't do anything." She died right there. I loved that woman to death. I couldn't take her leaving, losing her or the child. I just cracked. I couldn't take it anymore. No sleep losing her, losing my son. I didn't know what to do. Soon as I did it, I knew it was wrong. I didn't know what to do next.
Villella, a mortician for a funeral home, stated that he concealed his wife's body in a casket with another corpse and then buried the casket. Investigators later exhumed the casket and Exelee's body was recovered. The medical examiner testified that Exelee was stabbed four times in the chest. Three of those stab wounds were independently fatal. There was no evidence of a struggle or defensive wounds. The wounds were consistent with the victim being stabbed to death while asleep.
As part of Villella's case, the defense called Mark Camp, a co-worker of Exelee. Before defense counsel began to question Camp about his purported affair with Exelee, the prosecutor objected to any further questioning of Camp on relevancy grounds. The defense responded that the evidence of the existence of the affair was relevant to corroborate Villella's statements to the police and to prove that his belief his wife was having an affair was well founded. Otherwise, defense counsel argued, without any proof of an affair other than Villella's statements, the jury might believe Villella made up the story. The state could argue that Villella killed his wife with premeditation and simply concocted the story of the affair in the hope of not being found guilty of first degree murder. The defense's concern proved to be well-founded, as evidenced by the prosecutor's response: "I'm not conceding that there was an affair, we don't really know yet."
The trial judge sustained the prosecutor's relevance objection, but allowed the defense to proffer the proposed testimony. On proffer, Camp admitted he went out with Exelee one night and drove her home because she was too drunk to drive. However, he denied having an affair with her and denied calling her at home. He testified he did not recall telling investigators in the presence of his attorney that he was having an affair with Exelee or that he had called her house. The judge again sustained the objection. Defense counsel then proffered the testimony of the Investigator Robert Willis and Camp's attorney, Michael Politis, who both testified that Camp admitted having the affair and admitted calling Exelee.
After the proffers, the trial judge revised his ruling to allow the defense to ask whether Camp had ever called Exelee at home. Defense counsel then called Camp and asked whether he had ever called Exelee at home. Camp denied calling her at home. He also testified that he did not recall telling Willis, in the presence of Politis, that he called Exelee at home. Willis and Politis then testified that Camp told them he did call Exelee at home.
During his initial closing argument, the prosecutor told jurors:

There are insinuations made by the defense that maybe Exelee Villella was having an affair. Those insinuations came from the defendant's own statements, that is the only source for those insinuations and I will touch upon that because that is the only source as far as what possible [sic] was going on in their marriage. There was no other evidence that would indicate one way or another what was going on with Exelee Villella in her life so if one of you say, well what *195 if she was having an affair, the response to that is that question is not relevant to what happened and you can play it out both ways. What if she was having an affair, is that justifiable for the defendant to stand over her sleeping body and stab her four times in the chest as she said, "I didn't do anything." What if she was not having an affair, does that still justify what the defendant did ....
(Emphasis added). During his rebuttal argument, the prosecutor told jurors:
The defense put on Mark Camp to, in essence, say, yes, I never called there. And they put on Investigator Willis and he said, yes, I thought he said he had called there. But you don't get the benefit of knowing where, why, who, whether any conversations took place or whether she hung up, was it work related. The inference is that must be the lover, that must be the guy, the boyfriend, but were you ever given anything else?

(Emphasis added).
Defense counsel objected and moved for a mistrial. Defense counsel reminded the judge that having successfully sought to exclude evidence of the affair, it was fundamentally unfair for the prosecutor to now suggest that the defense failed to produce any independent evidence of the affair. The trial judge sustained defense's objection but denied the motion for mistrial and gave the following curative instruction:
Ladies and gentleman, you are instruct (sic) to disregard the prosecutor's last statement. The defendant is not required to present any evidence or prove anything.
The jury found Villella guilty of first degree murder. On appeal, Villella argues that the trial court erred in excluding evidence of the affair because that evidence was relevant to establish his defense that he killed his wife in the heat of passion.
The defense of "heat of passion" is well established in Florida. It can be a complete defense if the killing occurs by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation. See § 782.03, Fla. Stat. (2002); see also Fla. Std. Jury Instr. (Crim.) On Excusable Homicide. Or, as in the instant case, it can be used as a partial defense, to negate the element of premeditation in first degree murder or the element of depravity in second degree murder. See, e.g., Douglas v. State, 652 So.2d 887 (Fla. 4th DCA 1995).
One of our supreme court's earliest explanations of the substance and purpose of this partial crime of passion defense is found in Whidden v. State, 64 Fla. 165, 59 So. 561 (1912):
A sudden transport of passion, caused by adequate provocation, if it suspends the exercise of judgment, and dominates volition, so as to exclude premeditation and a previously formed design, may not excuse or justify a homicide, but it may be sufficient to reduce a homicide below murder in the first degree, although the passion does not entirely dethrone the actor's reason.
Id. at 561; see also Paz v. State, 777 So.2d 983 (Fla. 3d DCA 2000). The court in Whidden also stressed the importance of allowing evidence relevant to this defense, stating:
In a prosecution for murder in the first degree for the unlawful killing of a human being from a premeditated design to effect the death of the person killed, or any human being, the defendant under a plea of not guilty may introduce any relevant and proper evidence tending to show a lack of premeditated design in the admitted killing so as to *196 reduce the offense charged to a lower degree of homicide.
Whidden, 59 So. at 561. The Fourth District Court of Appeal reaffirmed the importance of allowing a defendant to present such evidence, stating:
Where the defendant is being prosecuted for a killing which occurred in the heat of passion, however, evidence of the past relationship between the victim and the defendant, which would be relevant to show why the defendant went into a rage, is admissible even if it reflects badly on the character of the victim.
Douglas v. State, 652 So.2d 887, 890 (Fla. 4th DCA 1995).
In Auchmuty v. State, 594 So.2d 859 (Fla. 4th DCA 1992), the defendant shot and killed the victim after finding him naked in bed with his estranged wife. Auchmuty sought to prove his emotional trauma from being separated and finding his wife in bed with another man was intensified by the fact that he had a special relationship with the man. Specifically, the defendant sought to present evidence that he had given the man a job, had done several favors for him and had even come to regard him as a son, despite the fact that this man was a convicted felon. The trial court excluded this evidence on the ground that it was irrelevant.
The appellate court reversed, however, stating:
The material fact which the excluded evidence in this case would have tended to prove was, as in Billeaud, central to the defense: that the unexpected discovery of the betrayal by a man he regarded as his son with his very own wife evoked a rage greater than the jury might have expected.
Id. at 860.
In Billeaud v. State, 578 So.2d 343 (Fla. 1st DCA 1991), the defendant stabbed his wife's paramour to death after the wife left the defendant and moved in with the paramour. In a pre-trial motion, the state successfully excluded evidence of the wife's prior extramarital affairs. The defense proffered the testimony of the wife that the defendant had accused her of having affairs in the past. They argued this evidence was central to their defense that the killing was a crime of passion.
On appeal, the First District Court of Appeal concluded the trial court abused its discretion in excluding the evidence because it was relevant to prove that the latest affair was the "straw that broke the camel's back." Id. at 344. The court noted the excluded evidence could have "significantly strengthened" the theory of defense. Id. at 345. Nevertheless, the court affirmed, finding the error harmless.
In Smith v. State, 314 So.2d 226 (Fla. 4th DCA 1975), the defendant was convicted of second degree murder in killing his wife and the court held that evidence of his wife's prior affair would not be relevant because premeditation was not a factor in second degree murder. By way of dicta, the court noted that if the victim had told defendant she was having an affair, proffered evidence of the actual fact of sexual relations would be "relevant and properly admissible."
In the instant case, the trial judge correctly identified the relevancy issue and the danger of having a "mini-trial" on Exelee's purported affair. However, we conclude that the exclusion of any corroborative evidence of the existence of this alleged affair was error as it was vital to Villella's defense that he acted out of passion. The jury heard Villella tell police he suspected an affair because his wife was making and receiving unusual phone calls, staying out late drinking, and on one such occasion, was driven home by another *197 man. Villella then found an intimate letter Exelee had written to the man who had driven her home. Villella confronted his wife and she admitted that she was having an affair with this man. The excluded evidence (a) that Camp admitted the existence of an affair with Exelee, and (b) that he admitted driving Exelee home, would have provided independent corroboration of Villella's statements to the police that he believed his wife was having an affair. Such evidence also would have tended to show his belief that his wife was having an affair was neither a baseless suspicion nor a fabrication made to cover up a cold-blooded murder. We conclude the trial court abused its discretion in excluding this evidence so central to the defense's strategy.
The prejudice was compounded by the prosecutor's improper argument to the jury that the defense failed to present any independent evidence of the affair. It is well established that it is improper for a prosecutor to comment on the defendant's failure to mount a defense. See, e.g., Wolcott v. State, 774 So.2d 954 (Fla. 5th DCA 2001). These comments were especially inappropriate in light of the fact that the prosecutor had successfully sought to exclude the very evidence he now complained that the defense failed to produce. This court condemned such conduct in Reid v. State, 784 So.2d 605 (Fla. 5th DCA 2001), when it held that the state could not have exculpatory testimony excluded and then argue to the jury that absence of such evidence belied a self defense theory.
Quoting Gonzalez v. State, 774 So.2d 796 (Fla. 3d DCA 2000), this court stated:
The prosecutor's use of the privilege of nondisclosure, first as a shield, then as a sword, unfairly prejudiced the defendant. While the State is free to argue to the jury any theory of a crime that is reasonably supported by evidence, it may not subvert the truth-seeking function of a trial by obtaining a conviction or sentence based on the obfuscation of relevant facts.
Reid v. State, 784 So.2d at 606-07.
In Garcia v. State, 564 So.2d 124 (Fla. 1990), our supreme court held that the combined errors of excluding relevant payroll records and the prosecutor's subsequent argument to the jury that the records did not exist warranted reversal.
Likewise, we cannot say beyond a reasonable doubt that the combination of the error of the exclusion of the affair evidence and the subsequent comment on the lack of it, was harmless. In this case, the admonition from the bench to disregard the statement was not enough to overcome the overall prejudice to the defendant. A mistrial should have been declared. Accordingly, we reverse Villella's conviction and remand for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
COBB, J., concurs.
SHARP, W., J., concurs in part and dissents in part, with opinion.
SHARP, W., J., concurring in part and dissenting in part.
I agree that the prosecutor's comments during closing arguments constituted a due process violation sufficient to warrant a new trial. However, I disagree the trial court abused its discretion in excluding evidence the victim was, in fact, having an affair.
As the majority points out, the defense of heat of passion is well-established in Florida. In Whidden v. State, 64 Fla. 165, 59 So. 561 (1912), the Florida Supreme Court explained:

*198 A sudden transport of passion, caused by adequate provocation, if it suspends the exercise of judgment, and dominates volition, so as to exclude premeditation and a previously formed design, may not excuse or justify a homicide, but it may be sufficient to reduce a homicide below murder in the first degree, although the passion does not entirely dethrone the actor's reason. (emphasis added)
Later, in Febre v. State, 158 Fla. 853, 30 So.2d 367 (1947), the court stated:
The law reduces the killing of a person in the heat of passion from murder to manslaughter out of a recognition of the frailty of human nature, of the temporary suspension or overthrow of the reason or judgment of the defendant by the sudden access of passion and because in such case there is an absence of malice. Such killing is not supposed to proceed from a bad or corrupt heart, but rather from the infirmity of passion to which even good men are subject. Passion is the state of mind when it is powerfully acted on and influenced by something external to itself. It is one of the emotions of the mind known as anger, rage, sudden resentment, or terror. But for passion to constitute a mitigation of the crime from murder to manslaughter, it must arise from legal provocation. (emphasis added).
30 So.2d at 369.
Thus the heat of passion defense involves a sudden or immediate emotional response. For example, in Whidden, the wife told the defendant, her husband, that the victim had assaulted her and threatened to kill her if she told anyone. About twenty minutes later the defendant shot the victim. In Febre, the husband walked into his home and found his wife, scantily clad, and a nude man exiting their bedroom. A struggle immediately ensued and the man received a fatal skull fracture. In Paz v. State, 777 So.2d 983 (Fla. 3d DCA 2000), the defendant realized the victim had sexually assaulted his wife, immediately grabbed a knife from the kitchen counter, and stabbed the victim.
By his own account, Villella had no sudden or emotional response to the news that his wife was having an affair. Villella told authorities his wife had been acting differently for several weeksshe had been going to work early, staying out late and getting private telephone calls. On Sunday, five days before he stabbed his wife, Villella found an incriminating letter in his wife's purse and confronted her. According to Villella, she admitted she was having an affair but he forgave her and they planned to go for marriage counseling.
On Monday night, Villella and his wife went to a movie. On Tuesday, Villella, his wife and their infant son went to the airport to pickup the body of Marjorie Hutchinson (Villella hid his wife's body underneath the body of Mrs. Hutchinson in her casket). On Wednesday, Villella and his wife went out for dinner.
On Thursday, Villella went to the store and bought ingredients for dinner and bought his wife some roses. She told him she wanted a divorce. Villella, however, did not attack his wife after hearing this news. He took some Nyquil and went to sleep on the couch around 10:00 p.m. About two and one-half hours later, he awoke and went into the bedroom to talk to his wife. She wanted to sleep and asked to be left alone. Villella went back to the couch for awhile and took two Tylenol PM tablets. Villella then went into the kitchen, got a knife, went back into the bedroom and stabbed his wife four times in the chest.
Villella's own account of events negates any "sudden passion" defense. His statements, along with his choice of weapon and the multiple stab wounds, are sufficient to *199 establish premeditation. See Floyd v. State, 2002 WL 1926223, ___ So.2d ___ (Fla. Aug.22, 2002); Morrison v. State, 818 So.2d 432 (Fla.), cert. denied, ___ U.S. ___, 123 S.Ct. 406, 154 L.Ed.2d 308 (2002); Perry v. State, 801 So.2d 78 (Fla. 2001); Spencer v. State, 645 So.2d 377 (Fla.1994).
Villella was able to fully present his defensea defense which was obviously rejected by the jury. The court allowed the defense to question and impeach the wife's co-worker about telephone calls he made to the Villella home. These calls could have made Villella suspect or confirm that his wife was having an affair. However, the court did not allow other evidence of which Villella had no knowledge. If Villella were unaware of these events, they could not have influenced his mental condition. That evidence was properly excluded as irrelevant. See Boyd v. State, 162 So.2d 271 (Fla. 2d DCA 1964) (in prosecution for murder of victim allegedly having an affair with defendant's wife, evidence of matters concerning the wife which had not been communicated to the defendant was properly excluded).
To admit evidence of the wife's activities of which the defendant has no knowledge serves only to disparage the victim. While this is a clever defense tactic, the character of a homicide victim generally cannot be attacked unless there is an issue of selfdefense. Douglas v. State, 652 So.2d 887 (Fla. 4th DCA), rev. denied, 661 So.2d 823 (Fla.1995).
However, I do agree with the majority that the prosecutor's improper comments during closing arguments warrant a new trial. First, these comments suggested the defendant has the burden of proof. See, e.g., Wolcott v. State, 774 So.2d 954 (Fla. 5th DCA 2001) (prosecutor may not comment on defendant's failure to mount a defense because doing so could lead jury to erroneously conclude that defendant has the burden of doing so). Second, the jury was not presented with additional evidence of the wife's affair because it was excluded by the court at the request of the prosecutor.
An improper argument by a prosecutor can make a trial so fundamentally unfair as to deny the defendant due process. State v. Gates, 826 So.2d 1064 (Fla. 2d DCA 2002). The prosecutor may properly argue that the evidence supports a finding of premeditation and point out the flaws in the defense theory of a "heat of passion" killing. However, it is fundamentally unfair to suggest there was no evidence of the affair when the prosecutor was successful in excluding this evidence. The prosecutor's comments convey the idea there was no evidence because there was no affair, when in fact the defense proffered this evidence and sought to have it admitted. The prosecutor's obligation is to secure justice, not victory at any cost. Diaz v. State, 797 So.2d 1286 (Fla. 4th DCA 2001); Blackshear v. State, 774 So.2d 893 (Fla. 4th DCA 2001). Because of the fundamentally unfair comments of the prosecutor, I concur with the granting of a new trial.