# Third District Court of Appeal

## State of Florida

Opinion filed February 11, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1994
Lower Tribunal No. 20-373-A-K
_____

**Mayque Gomez Marin,**
Appellant,

vs.

**State of Florida,**
Appellee.

An Appeal from the Circuit Court for Monroe County, Mark Wilson, Judge.

Carlos J. Martinez, Public Defender, and Deborah Prager, Assistant Public Defender, for appellant.

James Uthmeier, Attorney General, and Ivy R. Ginsberg, Senior Assistant Attorney General, for appellee.

Before LINDSEY, GORDO and GOODEN, JJ.

GOODEN, J.

In this direct criminal appeal, Appellant Mayque Gomez Marin raises two issues. First, he argues the trial court committed fundamental error by failing to define a depraved mind and omitting the defense of provocation in the jury instructions for attempted second degree murder. Second, he challenges the legal basis for a $15,000 legal services fee. For the following reasons, the lower court's decision is affirmed in part and reversed in part.

## I.

After a hard day's work, Iliecer Noa, Jose Clemente, Jose Cordoba, and Oliver Baro were drinking and playing dominoes in the lobster yard at Fishbusterz Fishhouse. Meanwhile, Gomez Marin and his brother, Jose Luis Espinosa Gomez, arrived at the fishery on a moped. The brothers briefly boarded a nearby boat. They then approached the group.

According to witnesses, the brothers asked Noa about a car and for Ishmael's phone number. When Noa responded, "I can't give you the number because I don't have the number," both brothers pulled out guns. Espinosa Gomez then grabbed Noa by the neck, pulling him into a nearby shed. Gomez Marin then shot Noa, severely injuring him.[1] Moments later,

---

[1] As a result of his injuries, Noa was in a coma for three and a half months and three limbs were amputated.

a second shot was fired. The bullet struck Clemente, killing him. But witnesses did not see which brother fired that second shot.

According to Gomez Marin, he drove his brother to the fishery to buy back guns and a car that was put up as collateral for drugs. After his brother bought back the guns, they went to get the car from Noa and Ishmael. When asking about the car, Noa and his brother began to fight. Noa pulled out a knife and his brother his gun. His brother and Noa then struggled, moving towards the shed. Upon entering the shed, Noa took the brother's gun. Gomez Marin screamed, "Stop!" Noa then moved towards Gomez Marin. Fearing that Noa was about to shoot him, Gomez Marin pulled out his weapon and shot Noa. The brothers then ran to the moped and fled the scene.

The State charged Gomez Marin and Espinosa Gomez with second degree murder with a firearm and attempted second degree murder with a firearm. Gomez Marin was deemed indigent and the trial court appointed private conflict counsel to represent him.[2] At the request of Espinosa

---

[2] The public defender's office and the Office of Criminal Conflict and Civil Regional Counsel both had conflicts of interest and withdrew from trial proceedings.

Gomez, the cases were severed. Gomez Marin's case proceeded to trial. His defense was that he acted in self-defense and in the defense of others.

Several times throughout the trial, the court and the parties discussed jury instructions. At least three times, they discussed the instructions on attempted second degree murder. Gomez Marin also requested instructions on self-defense and defense of others. In the end, without objection from the parties, the trial court's instruction on attempted second degree murder differed from the standard jury instruction. It read:

> In order to prove that the defendant attempted to commit the crime of Second Degree Murder, the State must prove the following beyond a reasonable doubt:
>
> (1) Mayque Gomez Marin did some act toward committing the crime of Second Degree Murder that went beyond just thinking or talking about it;
>
> (2) he would have committed the crime except that he failed.
>
> The crime of Second Degree Murder is defined as,
>
> (1) Iliecer Noa is dead;
>
> (2) the death was caused by the criminal act of Mayque Gomez Marin;
>
> (3) there was an unlawful killing of Iliecer Noa by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life.

The instruction did not include:

An act is "imminently dangerous to another and demonstrated a depraved mind" if it is an act or series of acts that:

1. a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and

2. is done from ill will, hatred, spite, or an evil intent, and

3. is of such a nature that the act itself indicates an indifference to human life.

Fla. Std. Jury Instr. (Crim.) 6.4. The trial court also did not issue the heat of passion defense instruction.

Ultimately, the jury found Gomez Marin guilty of the lesser included offense of manslaughter with a firearm and attempted second degree murder with a firearm causing great bodily harm.

The trial court sentenced Gomez Marin to thirty years for manslaughter and a life sentence for attempted second degree murder, with each sentence to run consecutively. The trial court then addressed costs and defense counsel's legal services fee. Although defense counsel revealed that he had not finished reviewing the number of hours incurred, he requested $15,000 based on the standard flat fee from the Justice Administrative Commission. The trial court stated:

Under Section 938.05, there's $225 in court costs. By agreement of parties as well as the defendant, there's a $40 investigative fee to the sheriff's office. By statute, there's a $100 cost of prosecution. By the agreement of the parties as well as the

5

defendant, there's a $15,000 legal services fee imposed. Monetary amounts are reduced to judgment liens.

While Gomez Marin did not voice an objection, he was not informed that he had a right to contest the fee at a subsequent hearing. This appeal followed.

While on appeal, Gomez Marin filed a motion to correct sentencing error and requested the legal services fee be reduced to $100. Since the trial court did not rule on the motion within sixty days, it was deemed denied. Fla. R. Crim. P. 3.800(b)(2)(B).

## II.

Our review of both issues is de novo. See State v. Smith, 241 So. 3d 53, 55 (Fla. 2018) ("Whether an error is fundamental . . . is a question of law we review de novo."); Cotto v. State, 139 So. 3d 283, 286 (Fla. 2014) ("Questions of statutory interpretation are reviewed de novo."); McMath v. State, 409 So. 3d 1271, 1276 (Fla. 1st DCA 2025) ("Motions to correct sentencing errors involve questions of law subject to de novo review.").

## III.

Florida's Constitution safeguards the right to a fair and impartial trial. See Art. I, § 16(a), Fla. Const. ("In all criminal prosecutions the accused shall . . . have the right . . . to have a speedy and public trial by impartial jury . . . ."); Art. I, § 22, Fla. Const. ("The right of trial by jury shall be secure to all and remain inviolate."). "It is an inherent and indispensable requisite of a fair and

impartial trial . . . that a defendant be accorded the right to have a Court correctly and intelligently instruct the jury on the essential and material elements of the crime charged and required to be proven by competent evidence." Gerds v. State, 64 So. 2d 915, 916 (Fla. 1953).

While the responsibility to ensure the jury is correctly instructed falls upon the trial judge, parties must still contemporaneously object. State v. Delva, 575 So. 2d 643, 644 (Fla. 1991); Fla. R. Crim. P. 3.390(d). This puts the trial court on notice that there is an issue and gives it an opportunity to correct it if necessary. This requirement "is based on practical necessity and basic fairness in the operation of a judicial system." Castor v. State, 365 So. 2d 701, 703 (Fla. 1978).

If no contemporaneous objection is lodged, a party may only raise the issue on appeal if fundamental error occurred. Delva, 575 So. 2d at 644. "[I]n order to be of such fundamental nature as to justify a reversal in the absence of timely objection the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Brown v. State, 124 So. 2d 481, 484 (Fla. 1960). See also Sanford v. Rubin, 237 So. 2d 134, 137 (Fla. 1970) ("Fundamental error . . . is error which goes to the foundation of the case or goes to the merits of the cause of action."); Hamilton v. State, 88 So. 2d 606,

607 (Fla. 1956). Put differently, "fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict." Stewart v. State, 420 So. 2d 862, 863 (Fla. 1982). It directly strikes against the party's right to a fair and impartial trial.

But "not all error in jury instructions is fundamental error." Garzon v. State, 980 So. 2d 1038, 1042 (Fla. 2008). See generally Farina v. State, 937 So. 2d 612, 629 (Fla. 2006) ("We have cautioned appellate courts to exercise their discretion concerning fundamental error very guardedly.") (internal quotations omitted).

## A.

Gomez Marin maintains that the trial court committed fundamental error by not defining a depraved mind. The State concedes the trial court failed to do so. But it asserts it is not fundamental error because this element was not in dispute. See Delva, 575 So. 2d at 645 ("Failing to instruct on an element of the crime over which the record reflects there was no dispute is not fundamental error and there must be an objection to preserve the issue for appeal.").

Yet the State's response misses the mark. Gomez Marin was charged with attempted second degree murder. This crime is codified in two statutes—sections 777.04 and 782.04, Florida Statutes. See § 777.04(1),

Fla. Stat. (2020); § 782.04(2), Fla. Stat. (2020). It has two elements: "(1) the defendant intentionally committed an act that could have resulted, but did not result, in the death of someone, and (2) the act was imminently dangerous to another and demonstrated a depraved mind without regard for human life." State v. Florida, 894 So. 2d 941, 945–46 (Fla. 2005), overruled on other grounds by, Valdes v. State, 3 So. 3d 1067 (Fla. 2009). Gomez Marin claimed self-defense. When a defendant argues self-defense and claims the use of force was necessary to prevent imminent death or great bodily harm, this directly contradicts the notion that the defendant acted with a depraved mind without regard for human life. See generally Mohammed v. State, 309 So. 3d 269, 274 (Fla. 5th DCA 2020). For that reason, depraved mind was the key element in dispute at trial.

Even still, the State's response conflates the essential elements of the crime with the definitions of terms within those elements. While the trial court properly instructed the jury on every element of the offense, it did not define depraved mind. The Florida Supreme Court has ruled that such an omission is not fundamental error. See State v. Bryan, 287 So. 2d 73, 76 (Fla. 1973) ("We disagree that the term 'depraved mind regardless of human life' is one which of necessity, absent a request for an instruction or an objection to its not being given, creates fundamental error. It is frankly our view that the

9

average juror pretty well understands what a depraved mind is, and particularly where it is noted at least in partial definition as one which has no regard for human life. This was sufficient for the jury's evaluation in our judgment and we do not find the charges as given to be so recondite in their meaning as to escape the jury's understanding."). And so do we.

What is more, Gomez Marin's argument relies on isolating a single instruction—attempted second degree murder. The trial court defined depraved mind when it instructed the jury on the first count—second degree murder. The law requires jury instructions to be considered as a whole rather than in pieces. See generally Johnson v. State, 252 So. 2d 361, 364 (Fla. 1971), vacated in part sub nom., Johnson v. Florida, 408 U.S. 939 (1972) ("It is basic in our criminal law that instructions must be considered in relation to each other and all together and not in isolation. Instructions in a capital homicide case must give the jury a full, fair, complete and correct statement of the rules of law applicable to the case, but material errors and inaccuracies in various charges of the Trial Judge's complete instructions to the jury may be corrected and cured by other charges given, and if it appears from the whole record that the jury could not have been misled by the instructions, then the conviction should not be reversed on account of any alleged inaccuracy of a single charge."); Driver v. State, 46 So. 2d 718, 720 (Fla.

10

1950) ("[T]he challenged instruction should be considered in connection with all other instructions bearing on the same subject and if, when thus considered, the law appears to have been fairly presented to the jury, an assignment predicated on the challenged instruction standing alone, must fail."); Baston v. Shelton, 13 So. 2d 453, 456 (Fla. 1943) ("A single instruction is not required to contain all the law relating to the subject treated, and, in determining whether challenged instructions are proper or improper, the entire instructions as given must be considered as an entirety."). Viewing the jury instructions this way, the jury was given adequate guidance to perform its duty. See State v. Floyd, 186 So. 3d 1013, 1018–19 (Fla. 2016); Bryan, 287 So. 2d at 75. Simply put, Gomez Marin has not shown that an error occurred, let alone a fundamental one.

## B.

Next, Gomez Marin asserts that the trial court committed fundamental error when it omitted reference to provocation. That portion of the standard instruction is part of the heat of passion defense and states: "An issue in this case is whether (defendant) did not have a depraved mind without regard for human life because [he] [she] acted in the heat of passion based on adequate provocation." Fla. Std. Jury Instr. (Crim.) 6.4.

11

The heat of passion defense is a long-standing fixture of our legal framework. See Whidden v. State, 59 So. 561, 561 (Fla. 1912); Rivers v. State, 78 So. 343, 345 (Fla. 1918).

> A killing in the 'heat of passion' occurs when the state of mind of the slayer is necessarily different from that when the killing is done in self-defense. In the heat of passion the slayer is oblivious to his real or apparent situation. Whether he believes or does not believe that he is in danger is immaterial; it has no bearing upon the question. He is intoxicated by his passion, is impelled by a blind and unreasoning fury to redress his real or imagined injury, and while in that condition of frenzy and distraction fires the fatal shot.

Disney v. State, 73 So. 598, 601 (Fla. 1916). It operates as a "complete defense if the killing occurs by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation." Villella v. State, 833 So. 2d 192, 195 (Fla. 5th DCA 2002). See § 782.03, Fla. Stat. (2020). It also can be a partial defense "to negate the element of premeditation in first-degree murder or the element of depravity in second-degree murder." Taylor v. State, 316 So. 3d 420, 427 (Fla. 1st DCA 2021).

As there was no objection, we again examine for fundamental error. Since a defense is involved, the existence of fundamental error depends on whether the trial court issued an incorrect instruction or no instruction at all. If an incorrect instruction is given, fundamental error occurs where the instruction is so flawed it deprived the defendant of a fair trial. Smith v. State,

12

521 So. 2d 106, 108 (Fla. 1988). But, if no instruction is issued, there is no fundamental error because "[f]ailure to give an instruction unnecessary to prove an essential element of the crime charged is not fundamental error." Sochor v. State, 619 So. 2d 285, 290 (Fla. 1993) (finding no fundamental error in failure to instruct on voluntary intoxication defense to felony murder based on kidnapping). Cf. Bridges v. State, 878 So. 2d 483, 484 (Fla. 4th DCA 2004) ("Unlike the failure to instruct on an essential element of a crime, however, the failure to instruct on a defense cannot be raised for the first time on appeal.").

Because this instruction went to a defense and not to an essential element of the crime charged, an objection was necessary to preserve the issue on appeal. So there is no fundamental error in the absence of this instruction.[3]

## IV.

Lastly, Gomez Marin maintains that the $15,000 legal services fee should not have been imposed, as it was arbitrary and he was not advised of his right to contest it. The State, however, contends that this was done in

---

[3] The State focuses on the evidence presented, arguing that no evidence of legally adequate provocation was shown. While true, this does not guide our fundamental error analysis on the absence of a defense instruction.

accordance with the Justice Administrative Commission statute and fee schedule. We agree with Gomez Marin and reverse on this issue.

A convicted defendant represented by the public defender's office, office of criminal conflict and civil regional counsel, or a private conflict attorney is liable for attorney's fees and costs. § 938.29(1)(a), Fla. Stat. (2023). "Attorney's fees and costs shall be set in all cases at . . . no less than $100 per case when a felony offense is charged . . . ." Id. The trial court can order a larger amount, but only "upon a showing of sufficient proof of higher fees or costs incurred." Id. This higher amount cannot be arbitrary and must be supported by a factual basis. R.R. v. State, 956 So. 2d 557, 558 (Fla. 5th DCA 2007). "This generally requires that the amount of the lien be established by applying a reasonable hourly rate to the time the attorney spent on the case." Id. And this often requires an evidentiary hearing. See Williams v. State, 207 So. 3d 1029 (Fla. 1st DCA 2017). In any event, the defendant must be given adequate notice and be advised he has a right to contest the fee at a future hearing. Fla. R. Crim. P. 3.720(d)(1); Taylor v. State, 352 So. 3d 346, 348 (Fla. 4th DCA 2022).

Without providing adequate notice and advising Gomez Marin of the right to contest, the trial court imposed a $15,000 legal services fee. This was based solely on the fee that the Justice Administrative Commission

would pay for this type of case—not on the number of hours counsel spent and his reasonable hourly rate.  No invoices or bill records were presented and no evidentiary hearing was conducted.  This was truly arbitrary and contrary to section 938.29, Florida Statutes.

Even so, the State points us to section 27.5304, Florida Statutes, to justify the fee.  See § 27.5304, Fla. Stat. (2023).  But this section sets forth the framework for the Justice Administrative Commission to pay private court-appointed attorneys—*not for an indigent defendant to pay that attorney*.  That is a significant difference and fatal to the State's argument.

We reverse the trial court's imposition of the $15,000 legal services fee and denial of Gomez Marin's Rule 3.800(b) motion.  The fee was imposed arbitrarily and without a supporting factual basis.  On remand, the trial court is directed to either reduce the lien to the statutorily minimum or provide Gomez Marin with notice and an evidentiary hearing to address any amount in excess of that minimum.

## V.

We find that the trial court's jury instructions, while imperfect, did not fundamentally undermine the fairness of the trial.  Because the absence of either instruction does not rise to the level of fundamental error, we affirm the conviction.  But the $15,000 legal services fee cannot stand without a

15

proper legal and factual foundation.  We therefore reverse the imposition of this fee and remand for further proceedings.

Affirmed, in part; Reversed, in part, and remanded with instructions.